[No. H031647. Sixth Dist. Mar. 3, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE WHALEY, Defendant and Appellant.

780

Counsel

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Dolores A. Carr, District Attorney, and James S. Cahan, Deputy District Attorney, for Plaintiff and Respondent.

Opinion

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

Defendant George Whaley appeals from an order retroactively committing him to an "indeterminate term of commitment" (Welf. & Inst. Code, § 6604.1, subd. (a))[1] as a sexually violent predator under the Sexually Violent Predator Act (SVPA) (§ 6600 et seq.). Whaley was first committed to a two-year term on January 28, 1999, and his commitment was extended for additional two-year terms thereafter. In 2007, while a petition to extend Whaley's most recent term of commitment was pending, the People brought a motion to retroactively convert his first commitment on January 28, 1999, from a two-year term of commitment to an indeterminate term, pursuant to amended section 6604.1, subdivision (a), which provides that an indeterminate term begins on the date the court issues the "initial" order of commitment. The trial court agreed with the People's interpretation of section 6604.1, subdivision (a), and ordered Whaley committed to an indeterminate term. The trial court imposed the indeterminate term retroactive to the first order committing Whaley in 1999, and without a trial on the pending petition to extend Whaley's most recent term of commitment.

Whaley contends that the "indeterminate term of commitment" in section 6604.1, subdivision (a) may not be applied retroactively and that the SVPA, as amended, is unconstitutional. He also claims that his trial counsel provided ineffective assistance in opposing the People's motion to commit him to an indeterminate term of commitment. Lastly, he asserts that the petition to extend his commitment that is still pending in the trial court should be dismissed and that he should be released immediately.

For reasons that we will explain, we conclude that an indeterminate term of commitment imposed pursuant to section 6604.1 may not be imposed retroactively. Therefore, we will reverse the order. In view of our reversal of the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

order, we do not reach the issue of whether amendments to the SVPA that provide for an indeterminate term of commitment (see §§ 6604, 6604.1, subd. (a)) are constitutional. In addition, because Whaley's claim of ineffective assistance is based on his trial counsel's conduct in opposing the motion to commit him to an indeterminate term, our reversal of the resulting order makes it unnecessary to address Whaley's ineffective assistance of counsel claim. We further conclude that the petition pending in the trial court to extend Whaley's commitment should not be dismissed.

## II. AMENDMENTS TO SECTIONS 6604 AND 6604.1

The SVPA was amended in 2006 by Senate Bill No. 1128 (2005–2006 Reg. Sess.) (Senate Bill 1128) and subsequently by Proposition 83 that same year. Because the interpretation of the SVPA amendments is at issue in this case, we first provide an overview of the relevant amendments.

### A. *The SVPA Prior to the Amendments in 2006*

Prior to the changes in the SVPA in 2006, an individual determined to be a sexually violent predator was committed to the custody of the State Department of Mental Health for a two-year term pursuant to former section 6604. Commitment beyond that term required the filing of a petition for "extended commitment." (Former § 6604, as amended by Stats. 2000, ch. 420, § 3.)[2] Former section 6604.1, subdivision (a) provided that the two-year term of commitment commenced on the date upon which the "initial order of commitment" was issued under section 6604, and that any "subsequent extended commitments" were for two years and commenced from the date of the termination of the previous commitment. (Former § 6604.1, as amended

---

[2] Former section 6604 stated: "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for two years to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health, and the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment under this article or unless the term of commitment changes pursuant to subdivision (e) of Section 6605. Time spent on conditional release shall not count toward the two-year term of commitment, unless the person is placed in a locked facility by the conditional release program, in which case the time in a locked facility shall count toward the two-year term of commitment. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections." (Stats. 2000, ch. 420, § 3.)

by Stats. 2000, ch. 420, § 4.)[3] The procedures applicable to extension proceedings resulted in essentially a new determination of sexually violent predator status every two years. (*People v. Munoz* (2005) 129 Cal.App.4th 421, 429–430 [28 Cal.Rptr.3d 295].)

### B. *Senate Bill 1128*

On September 20, 2006, the Governor signed into law Senate Bill 1128, which amended the SVPA, among other statutes. (See Stats. 2006, ch. 337.) Senate Bill 1128 was urgency legislation that went into effect immediately. (Stats. 2006, ch. 337, § 62.) As a result of Senate Bill 1128, section 6604 thereafter provided for an indeterminate term of commitment. (Stats. 2006, ch. 337, § 55.)[4] Further, amended section 6604.1, subdivision (a) stated that the indeterminate term of commitment began on the date "the initial order of commitment" was issued by the court. (Stats. 2006, ch. 337, § 56.)[5] The

---

[3] Former section 6604.1 stated: "(a) The two-year term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. The initial two-year term shall not be reduced by any time spent in a secure facility prior to the order of commitment. For any subsequent extended commitments, the term of commitment shall be for two years commencing from the date of the termination of the previous commitment. [¶] (b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to extended commitment proceedings." (Stats. 2000, ch. 420, § 4.)

[4] Senate Bill 1128 amended section 6604 to state: "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health. Time spent on conditional release shall not count toward the term of commitment, unless the person is placed in a locked facility by the conditional release program, in which case the time in a locked facility shall count toward the term of commitment. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections and Rehabilitation." (Stats. 2006, ch. 337, § 55.)

[5] Senate Bill 1128 amended section 6604.1 to state: "(a) The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. [¶] (b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed pursuant to a trial conducted pursuant to subdivision (f) of Section 6605. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings." (Stats. 2006, ch. 337, § 56.)

references to two-year commitment terms, subsequent extended commitments, and extended commitments in sections 6604 and 6604.1 were eliminated. (Stats. 2006, ch. 337, §§ 55, 56.)

### C. *Proposition 83*

After Senate Bill 1128 went into effect, Proposition 83, an initiative measure, was approved by voters on November 7, 2006. The amendments provided by Proposition 83 took effect the following day on November 8, 2006. (See Cal. Const., art. II, § 10, subd. (a).)

Proposition 83 amended the SVPA as it existed prior to Senate Bill 1128. Proposition 83 did not amend the SVPA in exactly the same manner as Senate Bill 1128. (Compare § 6604.1, subd. (b) with Stats. 2006, ch. 337, § 56 [former § 6604.1, subd. (b) under Sen. Bill 1128].) Moreover, Proposition 83 incorporated additional amendments to the SVPA beyond those provided by Senate Bill 1128. (See, e.g., § 6600, subd. (a)(1).)

Regarding the term of commitment, Proposition 83, similar to Senate Bill 1128, amended section 6604 to provide that a sexually violent predator's commitment term is "indeterminate."[6] Section 6604.1, subdivision (a) states, as did the version in Senate Bill 1128, that the indeterminate term begins on the date upon which "the initial order of commitment" is issued.[7] The references to a two-year term of commitment, subsequent extended commitment, and extended commitment in section 6604 were eliminated, as were the references to a two-year commitment term and subsequent extended commitments in section 6604.1, subdivision (a). The SVPA still refers to "extended commitments" in section 6604.1, subdivision (b).

---

[6] Proposition 83 amended section 6604 to state: "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. If the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable. If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health. The facility shall be located on the grounds of an institution under the jurisdiction of the Department of Corrections."

[7] Proposition 83 amended section 6604.1 to state: "(a) The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section. [¶] (b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings."

For reasons that we will explain, the versions of sections 6604 and 6604.1 applicable in this case are the versions following amendment by Proposition 83.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. *SVPA Commitment Proceedings Prior to 2007*

In March 1998, the People filed a petition to commit Whaley as a sexually violent predator under the SVPA.[8] The petition was based on two qualifying convictions—rape and forcible oral copulation. The rape occurred in 1981. Whaley forced a 16-year-old girl to orally copulate him and submit to sexual intercourse. He also placed his penis into her anus. While in jail for the rape, Whaley and an inmate named Paige forced another inmate to orally copulate them. After Paige left, Whaley penetrated the victim's anus with his penis.

On January 28, 1999, after a court trial, Whaley was determined to be a sexually violent predator and ordered committed to the custody of the Department of Mental Health for a period of two years.[9]

Whaley's initial commitment was set to expire on January 28, 2001. Thereafter, following subsequent petitions to extend Whaley's commitment, Whaley was recommitted for additional two-year terms from January 28, 2001, to January 28, 2003; January 28, 2003, to January 28, 2005; and January 28, 2005, to January 28, 2007.

### B. *The 2007 Petition to Extend Commitment*

On January 2, 2007, prior to the expiration of Whaley's most recent two-year commitment term, the People filed a petition to extend Whaley's commitment "from January 28, 2007 to the term prescribed by law." In the

---

[8] We take judicial notice of this court's opinions in Whaley's previous appeals. (*People v. Whaley* (Jan. 26, 2000, H019827) [nonpub. opn.]; *People v. Whaley* (Nov. 29, 2004, H026463) [nonpub. opn.]; *People v. Whaley* (2007) 152 Cal.App.4th 968 [62 Cal.Rptr.3d 11].) Our summary of the pertinent factual and procedural background includes some information that we have taken from our prior opinions.

[9] By order dated October 25, 2007, we granted the People's request for judicial notice of certain findings and orders regarding Whaley's initial and subsequent commitments as a sexually violent predator; the amendments to the SVPA as provided by Senate Bill 1128; the text of Proposition 83, certain portions of the voter information guide regarding Proposition 83, and the fact that Proposition 83 was passed by the electorate on November 7, 2006; certain statutes of other states; a portion of the legislative history of Senate Bill 1128; and certain acts by the California Secretary of State regarding Proposition 83. We also granted Whaley's request for judicial notice of our prior opinion *People v. Whaley, supra,* H019827, and the voter information guide argument in favor of Proposition 83.

petition, the People alleged that Whaley "continues to meet the criteria for commitment as a sexually violent predator in that he continues to have a current diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely he will engage in sexually violent predatory criminal behavior in the future."

## C. *The 2007 Motion for an Indeterminate Term*

On May 4, 2007, while the petition to extend Whaley's commitment was pending, the People filed a motion seeking to retroactively convert Whaley's first commitment on January 28, 1999, from a two-year term to an indeterminate term. In the motion, the People contended that Whaley's commitment "is now indeterminate by operation of law" due to the passage of Senate Bill 1128 and Proposition 83. The People asserted that amended section 6604.1, subdivision (a), which provides that an indeterminate term begins on the date the court issues the "initial" order of commitment, requires the application of an indeterminate term retroactive to the date an individual is first committed as a sexually violent predator. The People contended this interpretation was supported by the fact that Senate Bill 1128 and Proposition 83 deleted references to "subsequent extended commitments" in sections 6604 and 6604.1, subdivision (a), reflecting an intent by the Legislature and the electorate to apply an indeterminate term retroactively, without the need for a recommitment hearing. The People asserted that the continued reference to "extended commitments" in amended section 6604.1, subdivision (b) pertains to proceedings to release an individual under section 6605, subdivision (f),[10] and "is not related to subsequent recommitment hearings," which had been eliminated by the amendments to the SVPA. The People also contended that

---

[10] Section 6605, subdivision (f) states: "In the event that the State Department of Mental Health has reason to believe that a person committed to it as a sexually violent predator is no longer a sexually violent predator, it shall seek judicial review of the person's commitment pursuant to the procedures set forth in Section 7250 in the superior court from which the commitment was made. If the superior court determines that the person is no longer a sexually violent predator, he or she shall be unconditionally released and unconditionally discharged."

Section 7250 states: "Any person who has been committed is entitled to a writ of habeas corpus, upon a proper application made by the State Department of Mental Health or the State Department of Developmental Services, by that person, or by a relative or friend in his or her behalf to the judge of the superior court of the county in which the hospital is located, or if the person has been found incompetent to stand trial and has been committed pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2 of the Penal Code, judicial review shall be in the superior court for the county that determined the question of the mental competence of the person. All documents requested by the court in the county of confinement shall be forwarded from the county of commitment to the court. Upon the return of the writ, the truth of the allegations under which he or she was committed shall be inquired into and determined. The medical history of the person as it appears in the clinical records shall be given in evidence, and the superintendent in charge of the state hospital wherein the person is held in custody and any other person who has knowledge of the facts shall be sworn and shall testify relative to the mental condition of the person."

the history of Senate Bill 1128 and Proposition 83 supported the retroactive application of an indeterminate term. Lastly, the People contended that retroactive application of an indeterminate term does not violate the ban on ex post facto legislation, nor does it violate the right to due process or equal protection.

In opposition to the motion, Whaley contended that an indeterminate term may not be applied retroactively and that he was entitled to an extended commitment trial even under the amended SVPA. Whaley relied on the reference to "extended commitments" in amended section 6604.1, subdivision (b) as providing support for this contention. According to Whaley, the term "extended commitments" contemplates "an extension on a previous commitment for a fixed duration." Whaley contended that there was no clear intent by the voters in passing Proposition 83, which amended the SVPA after Senate Bill 1128, to apply an indeterminate term retroactively. Further, Whaley argued that the amended SVPA is unconstitutional because it violates the due process, equal protection, double jeopardy, and ex post facto clauses.

On May 24, 2007, the trial court granted the motion. The court interpreted the reference to an "initial" order of commitment in amended section 6604.1, subdivision (a) as requiring an indeterminate term of commitment retroactive to the first order committing Whaley in 1999. The court explained: "There is nothing ambiguous or vague about the intent of the voters or of the language of this statute. 'Initial' means first. The new law, in using the term 'initial,' demonstrates the electorate knew there was such a thing as possible subsequent trials and subsequent orders of commitments under the former law. If the electorate wanted there to be another indeterminate trial after the passage of the law for cases in which there has already been a commitment order, it would have been provided for in Proposition 83. The word 'initial' was chosen, and it can only mean one thing: It is the first time it happens. The voters intended there to be but one initial order of commitment. This is also clear from the fact that all the language relating to 'subsequent' commitments has been eliminated from the prior law. The voters did not intend for there to be 'subsequent' hearings to determinate commitment under Section 6604.1 because the process for any 'subsequent' commitment order was eliminated on Nov. 8, 2006 when the revision took place." The court also ruled that the SVPA does not violate the ex post facto clause, equal protection clause, or due process clause. The court ordered Whaley's term of commitment to be "indeterminate retroactive to his initial order of commitment."

A few days later, on May 29, 2007, the court stayed the People's earlier petition of January 2, 2007 (seeking to extend Whaley's commitment), pending appellate review of the court's order committing Whaley to an indeterminate term.

On June 1, 2007, Whaley filed a timely notice of appeal from the "judgment" entered by the trial court "on May 24, 2007." An amended notice of appeal from the "judgment, or order after judgment affecting his substantial rights, entered . . . on May 24, 2007" was filed by Whaley on June 27, 2007.

## IV. DISCUSSION

### A. *The Parties' Contentions*

On appeal, Whaley challenges the order retroactively changing his initial commitment from a two-year term to an indeterminate term. Whaley contends sections 6604 and 6604.1 do not support the trial court's order, because those sections do not state that when a court has previously made "an order for a two year commitment, it becomes an indeterminate term." Whaley asserts that section 6604, which provides for an indeterminate term, pertains to "the disposition of a pending petition." Section 6604.1, subdivision (a) then clarifies "that *when* a commitment of an indeterminate term is made pursuant to section 6604, the commitment commences when the court makes the order . . . ." Whaley explains: "Section 6604.1 does not expressly or impliedly state that existing commitments become indeterminate. On the contrary, by its own terms, new section 6604.1 applies only when the court orders an indeterminate term under section 6604." Because all orders pursuant to section 6604 that pertained to Whaley were for two-year commitments, Whaley reasons that an indeterminate term could not commence under section 6604.1 based on those orders.

Whaley also contends that the new law providing for an indeterminate term may not be applied retroactively, because the trial court lacked jurisdiction to modify the order first committing him in 1999. Further, Whaley asserts that the amended SVPA, by requiring retroactive application of an indeterminate term, violates the separation of powers doctrine, constitutes an impermissible bill of attainder, and would violate his right to due process—including the right to notice. Whaley also claims that the amended SVPA is unconstitutional, because it violates the due process, equal protection, ex post facto, and double jeopardy clauses. In addition, he claims that his trial counsel provided ineffective assistance in opposing the People's motion to commit him to an indeterminate term. Regarding the People's petition to extend his commitment, Whaley asserts that the petition should be dismissed and he should be released immediately.

The People respond that amended sections 6604 and 6604.1 demonstrate an intent by the Legislature and the electorate to apply an indeterminate term retroactively, and the relevant history to the amendments supports the retroactive application. The People also contend that the trial court had jurisdiction

to order an indeterminate term retroactive to the first order committing Whaley, because the first order was not a final judgment or, alternatively, it was an order that may be modified by the court. Further, the People argue that amended sections 6604 and 6604.1, by requiring retroactive application of an indeterminate term, do not violate the separation of powers doctrine, do not constitute a bill of attainder, and do not violate due process. The People also assert that the amended SVPA comports with due process principles and does not violate the equal protection clause, double jeopardy clause, or ex post facto clause. In addition, the People argue that Whaley's related claim for ineffective assistance of counsel is without merit. Alternatively, the People maintain that if Whaley may not be committed to an indeterminate term retroactively, he should remain in custody and proceed to trial on the People's petition to extend commitment; dismissal of the stayed petition is not the proper remedy.

Because we find the retroactivity issue to be dispositive, we will discuss that issue first.

### B. *Retroactive Application of a New Statute or an Amendment to a Statute*

Our analysis begins with a determination of the proper standard of review where the issue on appeal involves the interpretation of a statute.

### 1. Standard of Review and Principles of Statutory Construction

"Matters of interpreting and applying a statute are questions of law. [Citations.]" (*Amdahl Corp. v. County of Santa Clara* (2004) 116 Cal.App.4th 604, 611 [10 Cal.Rptr.3d 486].) Questions of law are reviewed under the de novo standard of review. (*Ibid.*) Consequently, we will construe sections 6604 and 6604.1 independently.

The scope of our independent review of these sections is guided by California Supreme Court authority regarding the interpretation of a statute. "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Estate of Griswold* (2001) 25 Cal.4th 904, 910 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) " 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.]" (*Id.* at p. 911.) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (*Ibid.*) "If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history.

[Citation.]" (*Ibid.*) "In such cases, we ' " " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' [Citation.]" (*Ibid.*)

 " 'Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) " ' " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" ' [Citation.]" (*Ibid.*)

 Further, "[a]n established rule of statutory construction requires us to construe statutes to avoid 'constitutional infirmit[ies].' [Citations.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 846–847 [123 Cal.Rptr.2d 40, 50 P.3d 751] (*Myers*); see also *Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150] ["When faced with a statute reasonably susceptible of two or more interpretations, of which at least one raises constitutional questions, we should construe it in a manner that avoids *any* doubt about its validity."].)

 We apply the same rules that govern statutory construction when interpreting an initiative measure. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951].) " 'Thus, [1] "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] [2] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] [3] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] [¶] In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Id.* at p. 901.)

## 2. General Rule That Statutes Operate Prospectively

 The rules of statutory construction require us to consider legislation as being " ' " 'addressed to the future, not to the past.' " ' " (*Myers, supra,* 28 Cal.4th at p. 840.) "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a

clear indication that the electorate, or the Legislature, intended otherwise. [Citations.]" (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434]; see also *Stenger v. Anderson* (1967) 66 Cal.2d 970, 977 & fn. 13 [59 Cal.Rptr. 844, 429 P.2d 164] [applying the general rule of prospective application of a statute to the Welfare and Institutions Code].) "We may infer such an intent from the express provisions of the statute as well as from extrinsic sources, including the legislative history. [Citation.]" (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 222 [105 Cal.Rptr.2d 407, 19 P.3d 1148].) Nonetheless, "in the absence of an express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209 [246 Cal.Rptr. 629, 753 P.2d 585], italics added (*Evangelatos*); accord, *Myers, supra,* 28 Cal.4th at p. 841.) Although " 'no talismanic word or phrase is required to establish retroactivity,' " there nonetheless must be a clear manifestation or an "unequivocal and inflexible" assertion of retroactivity. (*Myers, supra,* 28 Cal.4th at p. 843.)

■ We next turn to the question of what is meant by a "prospective" or a "retroactive" application of a statute. "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. [Citations.] A law is not retroactive 'merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' [Citation.]" (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72].)

The distinction between a prospective or a retroactive application of a statute was discussed in *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275 [68 Cal.Rptr.3d 142] (*Bourquez*), in connection with the amended SVPA's requirement of an indeterminate term as stated in sections 6604 and 6604.1. In *Bourquez,* the two-year commitment terms of several persons committed under the SVPA had expired and petitions to extend their commitments were pending when Senate Bill 1128 and later Proposition 83 were passed. (*Bourquez, supra,* 156 Cal.App.4th at p. 1282.) The People indicated their intent to apply Proposition 83 to the pending petitions. (156 Cal.App.4th at p. 1282.) The superior court ruled that it had jurisdiction over the extension proceedings and that the petitions for extended commitment would be considered petitions for an indeterminate term. (*Id.* at p. 1283.) In their petitions for a writ of mandate, the petitioners contended the petitions to extend their commitments should be dismissed, because the amended SVPA

deleted the provisions for proceedings to extend commitments and there was no statutory authority to extend their commitments. (156 Cal.App.4th at p. 1283.) Even if the superior court had jurisdiction to proceed, the petitioners argued that their commitments could only be extended for two-year terms, and not an indeterminate term under the amended SVPA. They contended the application of an indeterminate term under the amended SVPA "would be an impermissible retroactive application." (156 Cal.App.4th at p. 1288.)

The *Bourquez* court denied the writ petitions. First, the court implied a saving clause in the amended SVPA to permit proceedings to extend commitments. (*Bourquez, supra,* 156 Cal.App.4th at pp. 1283–1288.) The court determined that a saving clause would give effect to the intent of the Legislature and the voters, as reflected in the amendments to sections 6604 and 6604.1 and the history of Senate Bill 1128 and Proposition 83, "to continue and strengthen the provisions for commitment of those found to be SVP's [sexually violent predators]." (*Bourquez,* at p. 1288.) In reaching this conclusion, the court noted that "[i]nexplicably, nothing in the text of Senate Bill 1128 or Proposition 83 makes mention of the effect of the amendments to the SVPA on those already committed under its provisions." (*Id.* at p. 1285.) However, in light of the amendments providing for an indeterminate term of commitment, and given that the "very nature" of Senate Bill 1128 and Proposition 83 was to "strengthen punishment and control of sexual offenders," the court concluded "that the Legislature and the voters must have intended that the new law should operate prospectively and that those previously found to be SVP's should remain subject to the provisions for extended commitments under the old law." (*Bourquez, supra,* 156 Cal.App.4th at p. 1287.)

Second, the *Bourquez* court determined that the application of an indeterminate commitment term under Proposition 83 to pending petitions to extend commitment was not a retroactive application of the law. (*Bourquez, supra,* 156 Cal.App.4th at pp. 1288–1289.) In undertaking its analysis, the court presumed Proposition 83 to operate prospectively, because the court found Proposition 83 to be "entirely silent on the question of retroactivity." (156 Cal.App.4th at p. 1288.)

Regarding pending petitions to extend commitments, the court explained: "In determining whether someone is [a sexually violent predator], the last event necessary is the person's mental state at the time of the commitment. For pending petitions, the person's mental state will be determined after the passage of Proposition 83, at the time of commitment." (*Bourquez, supra,* 156 Cal.App.4th at p. 1289.) The court further recognized that "[t]he requirement that a commitment under the SVPA be based on a currently diagnosed mental disorder applies to proceedings to extend a

commitment. Such proceedings are not a review hearing or a continuation of an earlier proceeding. [Citation.] Rather, an extension hearing is a new and independent proceeding at which the petitioner must prove the person meets the criteria of an SVP. [Citation.] The petitioner must prove the person is an SVP, not that the person is *still* one. [Citation.]" (*Ibid.,* fn. omitted.) The court concluded: "Because a proceeding to extend commitment under the SVPA focuses on the person's current mental state, applying the indeterminate term of commitment of Proposition 83 does not attach new legal consequences to conduct that was completed before the effective date of the law. [Citation.] Applying Proposition 83 to pending petitions to extend commitment under the SVPA to make any future extended commitment for an indeterminate term is not a retroactive application." (*Ibid.*)

As discussed below, we agree with the court in *Bourquez, supra,* 156 Cal.App.4th 1275, that the amendments to sections 6604 and 6604.1 providing for an indeterminate term apply prospectively.

## C. *Application of Retroactivity Rules in the Present Case*

The SVPA was amended by Senate Bill 1128 in September of 2006, followed by Proposition 83 in November 2006. The petition to extend Whaley's commitment was filed in January 2007. Because Proposition 83 provided the more recent amendments to the SVPA regarding an indeterminate term, and because the petition to extend Whaley's commitment was filed after the passage of Proposition 83, we will apply the version of the SVPA as it existed after the passage of Proposition 83.

In deciding that Proposition 83 applies in this case, we agree with the court in *Bourquez, supra,* 156 Cal.App.4th 1275, that the amendments to sections 6604 and 6604.1 providing for an indeterminate term apply prospectively. The language of Proposition 83 does not contain an express statement of retroactivity. Also absent is a clear indication in the statutory language, or in the voter information guide, that the voters intended an indeterminate term to be applied retroactively to completed commitment proceedings.

In reaching this conclusion, we find instructive those cases in which legislative intent or voter intent was sufficiently clear to establish retroactivity. For example, in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], the Supreme Court concluded that the amended statute at issue applied retroactively. The Supreme Court's conclusion was based, "in part, on the Legislature's adoption of a resolution, shortly after the enactment of the measure, indicating that the retroactivity question was specifically discussed during the legislative debate on the measure and declaring that the provision was intended to apply retroactively . . . ."

(*Evangelatos, supra,* 44 Cal.3d at p. 1211 [discussing *In re Marriage of Bouquet, supra,* 16 Cal.3d at pp. 588–591].)

In *Mannheim v. Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17], the Supreme Court also found an amended statute to operate retroactively. "[T]he statute in question incorporated by reference a separate statutory scheme which had expressly been made retroactive, and the *Mannheim* court reasoned that the Legislature must have intended the later statute to have a parallel application to the provision on which it was expressly fashioned." (*Evangelatos, supra,* 44 Cal.3d at p. 1211 [discussing *Mannheim v. Superior Court, supra,* 3 Cal.3d at pp. 686–687].)

In contrast, the California Supreme Court "at least in modern times" has "been cautious not to infer the voters' or the Legislature's intent on the subject of prospective versus retrospective operation from 'vague phrases' [citation] and 'broad, general language' [citation] in statutes, initiative measures and ballot pamphlets." (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 229–230 [46 Cal.Rptr.3d 57, 138 P.3d 207]; see also *Evangelatos, supra,* 44 Cal.3d at pp. 1208–1209.)

In this case, notwithstanding the absence of an express provision in either the amended SVPA or in Proposition 83 requiring retroactivity, which "strongly supports prospective operation of the measure" (*Evangelatos, supra,* 44 Cal.3d at p. 1209), the People attempt to overcome the presumption of prospective application by relying on certain statutory phrases and on other language in Proposition 83. None of these sources provides the requisite unequivocal and inflexible statement of retroactivity (see *Myers, supra,* 28 Cal.4th at p. 843), and we consider them more akin to the " 'vague phrases' " and " 'broad, general language' " our Supreme Court has cautioned against as indicative of voter intent of retroactivity. (*Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at p. 229.)

For example, the People point to the amendment to section 6604, which provides for an "indeterminate term" of commitment, and the amendment to section 6604.1, subdivision (a), which states: "The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the *initial* order of commitment pursuant to that section." (Italics added.) The People contend "the indeterminate term must, by definition, be retroactive," because section 6604.1, subdivision (a) now provides that the indeterminate term begins on the date of the "initial" order of commitment. The People also contend that the deletion of the reference to "subsequent extended commitments," among other language eliminated from the SVPA, indicates there is no need for a subsequent commitment hearing or term, and thus further demonstrates an intent to retroactively apply an

indeterminate term to the initial date of commitment, regardless of when the individual was first committed as a sexually violent predator.

We disagree that the reference to "initial" order in section 6604.1, subdivision (a), provides a sufficiently clear manifestation or an unequivocal and inflexible assertion (see *Myers, supra,* 28 Cal.4th at p. 843) that the electorate intended the retroactive application of an indeterminate term for those already committed under the SVPA. The reference to an "initial" order in section 6604.1, subdivision (a), existed prior to the amendments providing for an indeterminate term. (See former § 6604.1, as amended by Stats. 2000, ch. 420, § 4.)

■ Further, while the amendments eliminated from sections 6604 and 6604.1, subdivision (a) any reference to extended commitments or subsequent extended commitments,[11] the continued reference to an "initial" order does not mean the electorate intended an indeterminate term to be *retroactive* to the date of the first commitment order. We find that the language in these sections must be construed as providing for an indeterminate term for an order of commitment imposed *after* the passage of Proposition 83. Under this construction, if a person has been determined, by proof beyond a reasonable doubt, to be a sexually violent predator *and* committed to an indeterminate term pursuant to the amendment to section 6604, then that indeterminate term will begin, pursuant to section 6604.1, subdivision (a), when the court issues that order of commitment. In other words, we construe the reference to an "initial" order in section 6604.1, subdivision (a), as reflecting *when* the commitment term begins for a person *first* committed to an *indeterminate* term, rather than demonstrating intent by the voters to retroactively apply an indeterminate term to those already committed.

Our construction is supported by the findings necessary in a proceeding to extend the commitment. Under prior law, "[a]n SVP extension hearing is a new and independent proceeding at which, with limited exceptions, the petitioner must prove the defendant meets the criteria, including that he or she has a currently diagnosed mental disorder that renders the person dangerous. [¶] . . . [¶] This requirement for what is essentially a new determination of SVP status every two years arises from the logical and constitutional requirement that any SVP commitment be based on a *currently* diagnosed mental disorder which makes it likely the person will engage in sexually violent criminal behavior." (*People v. Munoz, supra,* 129 Cal.App.4th at pp. 429–430.) Thus, under prior law the People were "required in a recommitment proceeding to prove beyond a reasonable doubt that the defendant is an SVP, not that he is still an SVP." (*Id.* at p. 430.)

---

[11] Section 6604.1, subdivision (b) still refers to "extended commitments."

 Because an extension proceeding essentially requires a *new* determination of the individual's status as a sexually violent predator, it follows that the provisions of amended sections 6604 and 6604.1 may be applied prospectively to *all* pending and future commitment proceedings. This interpretation, which subjects a person previously found to be a sexually violent predator to one extension proceeding at which the person may be committed for an indeterminate term, will give effect to the intent of the voters "to strengthen punishment and control of sexual offenders." (*Bourquez, supra,* 156 Cal.App.4th at p. 1287.)

 Moreover, the SVPA, as amended by Proposition 83, contemplates additional proceedings and orders after the "initial" commitment order, contrary to the People's contention that Proposition 83's reference to an "initial" order reflects an intent to apply an indeterminate term retroactively to the first order of commitment. In this regard, section 6605[12] distinguishes

---

[12] Section 6605 states in part: "(a) A person found to be a sexually violent predator and committed to the custody of the State Department of Mental Health shall have a current examination of his or her mental condition made at least once every year. The annual report shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community. The Department of Mental Health shall file this periodic report with the court that committed the person under this article. The report shall be in the form of a declaration and shall be prepared by a professionally qualified person. A copy of the report shall be served on the prosecuting agency involved in the initial commitment and upon the committed person. The person may retain, or if he or she is indigent and so requests, the court may appoint, a qualified expert or professional person to examine him or her, and the expert or professional person shall have access to all records concerning the person. [¶] (b) If the Department of Mental Health determines that either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment. The court, upon receipt of the petition for conditional release to a less restrictive alternative or unconditional discharge, shall order a show cause hearing at which the court can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney or the committed person. [¶] (c) If the court at the show cause hearing determines that probable cause exists to believe that the committed person's diagnosed mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal behavior if discharged, then the court shall set a hearing on the issue. [¶] (d) At the hearing, the committed person shall have the right to be present and shall be entitled to the benefit of all constitutional protections that were afforded to him or her at the initial commitment proceeding. The attorney designated by the county pursuant to subdivision (i) of Section 6601 shall represent the state and shall have the right to demand a jury trial and to have the committed person evaluated by experts chosen by the state. The committed person also shall have the right to demand a jury trial and to have experts evaluate him or her on his or her behalf. The court shall appoint an expert if the person is indigent and requests an

between an "initial commitment proceeding" and a subsequent proceeding involving an individual's petition for conditional release or for an unconditional discharge. (See § 6605, subd. (d).) If the court or jury rules against the individual petitioning for a conditional release or an unconditional discharge, the commitment term runs "for an indeterminate period from the date of this ruling." (§ 6605, subd. (e).) The amended SVPA thus contemplates subsequent proceedings regarding release or discharge after the initial commitment proceeding and initial commitment order. The continued reference to an "initial" commitment order in amended section 6604.1, subdivision (a), therefore reflects a distinction between the various SVPA proceedings, rather than a clear indication that the electorate intended to retroactively impose an indeterminate term on those already committed under the SVPA.

The People rely on the voter information guide for Proposition 83 for a contrary statutory interpretation. In order to establish voter intent, the People point to a portion of the "Findings and Declarations" in Proposition 83, in which the voters expressed their understanding of the measure with respect to sexually violent predators: "California is the only state, of the number of states that have enacted laws allowing involuntary civil commitments for persons identified as sexually violent predators, which does not provide for indeterminate commitments. California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer a sexually violent predator. As such, this act allows California to protect the civil rights of those persons committed as a sexually violent predator while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.) We find that these general statements explain the rationale for the change in the law from a two-year to an indeterminate term of commitment under Proposition 83. The statements do not address the issue of retroactivity, and thus they do not demonstrate a clear manifestation or an unequivocal and inflexible assertion of retroactivity by the electorate. (See *Myers, supra,* 28 Cal.4th at p. 843.)

We also observe that the official summary of Proposition 83 prepared by the Attorney General states that it "[c]hanges" the two-year commitment term

appointment. The burden of proof at the hearing shall be on the state to prove beyond a reasonable doubt that the committed person's diagnosed mental disorder remains such that he or she is a danger to the health and safety of others and is likely to engage in sexually violent criminal behavior if discharged. [¶] (e) If the court or jury rules against the committed person at the hearing conducted pursuant to subdivision (d), the term of commitment of the person shall run for an indeterminate period from the date of this ruling. If the court or jury rules for the committed person, he or she shall be unconditionally released and unconditionally discharged."

"to an indeterminate commitment." (Voter Information Guide, Gen. Elec., *supra,* Official Title and Summary of Prop. 83, p. 42.) The Legislative Analyst explains that the measure requires that sexually violent predators "be committed . . . for an undetermined period of time rather than the renewable two-year commitment provided for under existing law," and that county costs would be reduced for commitment proceedings because of "[t]he measure's provisions providing for the indeterminate commitment . . . instead of the current two-year recommitment process." (Voter Information Guide, Gen. Elec., *supra,* analysis of Prop. 83 by Legis. Analyst, pp. 44, 45; see also *id.* at p. 45 [referring to "the change from two-year commitments to commitments for an undetermined period of time"].) Again, these statements generally describing the changes in the law under Proposition 83 do not demonstrate a clear intent by the electorate to impose an indeterminate term retroactively to those already committed under the SVPA. Moreover, these statements are consistent with an indeterminate term being applied to pending and future petitions for recommitment for those already committed as sexually violent predators before the change in the law.

We recognize that the electorate's intent regarding Proposition 83 was "to strengthen and improve the laws that punish and control sexual offenders." (Voter Information Guide, Gen. Elec., *supra,* text of Prop. 83, p. 138.) However, "a remedial purpose does not necessarily indicate an intent to apply the statute retroactively. Most statutory changes are, of course, intended to improve a preexisting situation and to bring about a fairer state of affairs, and if such an objective were itself sufficient to demonstrate a clear legislative intent to apply a statute retroactively, almost all statutory provisions and initiative measures would apply retroactively rather than prospectively." (*Evangelatos, supra,* 44 Cal.3d at p. 1213.)[13] We emphasize that because Proposition 83 is silent on retroactivity, and there is no clear indication of voter intent to apply the amendments retroactively, the general presumption of a prospective application in the absence of a clear contrary indication must apply to the amendments to sections 6604 and 6604.1. (*Myers, supra,* 28 Cal.4th at pp. 841, 843; *Tapia v. Superior Court, supra,* 53 Cal.3d at p. 287; *Evangelatos, supra,* 44 Cal.3d at p. 1209.)

We are also not convinced by the People's argument that certain portions of the legislative history of Senate Bill 1128 indicate an intent to apply an indeterminate term retroactively. The legislative history of Senate Bill 1128

---

[13] In *Evangelatos, supra,* 44 Cal.3d 1188, the Supreme Court held that Proposition 51, which limited an individual tortfeasor's liability for noneconomic damages to a proportion of such damages equal to the tortfeasor's own percentage of fault, was not unconstitutional on its face and did not apply to causes of action accruing before the measure's effective date.

was not presented to the voters in the voter information guide regarding Proposition 83 and therefore it is not relevant to our inquiry regarding voter intent. (See *People v. Rizo* (2000) 22 Cal.4th 681, 686, fn. 3 [94 Cal.Rptr.2d 375, 996 P.2d 27].) Even if we considered the legislative history of Senate Bill 1128, the portions identified by the People, such as the Legislative Counsel's Digest of Senate Bill 1128 and a statement in support of Senate Bill 1128, amount to little more than general or vague assertions regarding the effect of Senate Bill 1128, without referring to retroactivity or otherwise indicating a clear intent of retroactivity.

 The People also contend that an order of commitment under the SVPA is not a final judgment or that it may be modified, in this case, to provide for an indeterminate term retroactively. The People's contention lacks merit. "Code of Civil Procedure section 1064 declares that 'A judgment in a special proceeding is the *final* determination of the rights of the parties therein.' (Italics added.) 'It has been correctly stated that the general test for determining whether the judgment is final is "that where no issue is left for future consideration except the fact of compliance or non-compliance with the terms of the first decree, that decree is final, but where anything further in the nature of a judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." [Citations.]' [Citation.]" (*People v. Succop* (1966) 65 Cal.2d 483, 486 [55 Cal.Rptr. 397, 421 P.2d 405].)

 The first order committing an individual as a sexually violent predator is a final determination of the individual's mental state at that time. Indeed, a subsequent extension proceeding results in essentially a new determination of sexually violent predator status and "is not the mere continuation of an earlier proceeding." (*People v. Munoz, supra,* 129 Cal.App.4th at p. 429.) Each recommitment requires that the People "independently . . . prove that the defendant has a currently diagnosed mental disorder making him or her a danger." (*Id.* at p. 430.) While the People in this case point to a "stream of supervisory responsibilities" that a trial court has, or may have, after the first order of commitment (see §§ 6605, 6607, 6608), none of these subsequent proceedings involves the review of the first order of commitment or involves the determination of an issue "left for future consideration" (see *People v. Succop, supra,* 65 Cal.2d at p. 486) from the first commitment proceeding. (Cf. *People v. Gross* (1955) 44 Cal.2d 859, 860 [285 P.2d 630] [original commitment order of individual under former sexual psychopath law, former § 5500 et seq., appealable as a final judgment in a special proceeding under Code Civ. Proc., former § 963]; *People v. Lopez* (2006) 146 Cal.App.4th 1263, 1273 [53 Cal.Rptr.3d 549] [collateral estoppel

may preclude an individual from litigating the issue of qualifying convictions under the SVPA where the issue was decided against the individual in a prior SVPA proceeding, because, among other things, "the decision in the former proceeding that defendant is a sexually violent predator within the meaning of section 6600 et seq. was final and on the merits"].)

■ The People also assert that "[a]n SVP petition is, in essence like an injunction compelling a person to refrain from committing sexually violent offenses." We are not persuaded that a petition to commit an individual as a sexually violent predator is like an "injunction." In committing an individual as a sexually violent predator, the court is not ordering the individual to refrain from acting in a particular manner. Rather, the individuals are committed under the SVPA with the intent that they " 'be confined and treated until such time that it can be determined that they no longer present a threat to society.' " (*People v. Carmony* (2002) 99 Cal.App.4th 317, 324 [120 Cal.Rptr.2d 896] [quoting the uncodified statement of intent of the SVPA].) Given the special nature of SVPA proceedings, we reject the People's attempt to broadly characterize a commitment order as akin to, and subject to the same rules as, an injunction. (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760] ["an SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action"].)

■ For these reasons, we find that the amendments to sections 6604 and 6604.1 providing for an indeterminate term of commitment apply prospectively, because neither the language of those sections, nor Proposition 83 and the related voter information guide, provide a clear indication of retroactivity. We further find that a person already committed as a sexually violent predator before the amendments to sections 6604 and 6604.1 in 2006 is entitled to an extension proceeding at which there would be a new determination of the person's status as a sexually violent predator. We therefore conclude that Whaley may not be committed to an indeterminate term of commitment retroactive to the first order committing him as a sexually violent predator in 1999. Accordingly, we will reverse the trial court's order.

In view of our reversal of the order on statutory grounds, we need not reach the issue of whether the amendments providing for an indeterminate term of commitment (see §§ 6604, 6604.1, subd. (a)) are constitutional, and we express no opinion on the issue. (*California State Electronics Assn. v. Zeos Internat. Ltd.* (1996) 41 Cal.App.4th 1270, 1274 [49 Cal.Rptr.2d 127] [court

should avoid constitutional questions where other grounds are available to dispose of the case].) Further, because Whaley's claim of ineffective assistance is based on his trial counsel's conduct in opposing the motion to commit him to an indeterminate term, our reversal of the resulting order makes it unnecessary to address Whaley's ineffective assistance of counsel claim.

### D. *Status of the 2007 Petition to Extend Commitment*

After the trial court granted the People's motion to retroactively commit Whaley for an indeterminate term, Whaley moved to dismiss the People's petition filed January 2007 to extend his commitment. In response, the People requested that the petition be stayed pending appeal of the order committing Whaley for an indeterminate term. The trial court granted the People's request and stayed the petition pending appellate review of the order committing Whaley for an indeterminate term.

On appeal, Whaley explains that the People, instead of pursuing the petition to extend his commitment, sought to have him committed for an indeterminate term retroactively. Whaley contends that the People's "failure to prosecute" the extension petition "constitutes an abandonment and requires dismissal of the petition." Because his previous commitment expired in January 2007 and the People have failed to prosecute the petition to extend his commitment, Whaley contends due process requires his release.

■ We do not agree that Whaley is entitled to dismissal of the extension petition and immediate release. In general, the only act that may deprive a court of jurisdiction is the People's failure to file a petition for recommitment before the expiration of the prior commitment. (*People v. Evans* (2005) 132 Cal.App.4th 950, 956 [34 Cal.Rptr.3d 35]; *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1171 [21 Cal.Rptr.3d 21].) Here, Whaley does not dispute that a timely petition to extend his commitment was filed by the People. Moreover, we observe that the California Supreme Court in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1151 [81 Cal.Rptr.2d 492, 969 P.2d 584], like the trial court in the present case, stayed proceedings concerning a petition for commitment while the appeal was pending concerning the petition in that case. Our ruling reversing the order of the trial court is therefore without prejudice to further proceedings on the 2007 petition or the amendment of the 2007 petition to seek an indeterminate term. We express no opinion, however, as to the merits of the 2007 petition.

## V. DISPOSITION

The order of May 24, 2007, committing George Whaley to an indeterminate term is reversed.

McAdams, J., and Duffy, J., concurred.

The petitions of both respondents and appellants for review by the Supreme Court were denied June 18, 2008, S162151. George, C. J., Werdegar, J., and Corrigan, J., did not participate therein.