Filed 7/25/13  P. v. Willmes CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HERBERT ANTHONY WILLMES,<br><br>     Defendant and Appellant. | H039082<br>(Santa Clara County<br>Super. Ct. No. 211178) |

## I.  INTRODUCTION

In 2009, defendant Herbert Anthony Willmes was committed for an indeterminate term to the State Department of Mental Health (now State Department of State Hospitals; hereafter the Department) after a jury found him to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).[1]  Willmes appealed from the judgment contending, inter alia, that an indeterminate term of commitment violates equal protection.  This court reversed the judgment committing Willmes for an indeterminate term and remanded the matter to the trial court for reconsideration of his equal protection argument in light of *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), and the resolution of proceedings on remand

---

    [1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

in that case. (*People v. Willmes* (Nov. 30, 2010, H034656) [nonpub. opn.] (*Willmes*).)[2] This court also ordered that the trial court suspend further proceedings in Willmes's case pending finality of the proceedings on remand in *McKee I*.

After further trial court proceedings were held on remand in *McKee I*, the defendant appealed and Division One of the Fourth Appellate District issued its opinion determining that substantial evidence supports the trial court's finding that disparate treatment of SVP's is warranted. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1330-1331 (*McKee II*), review denied Oct. 10, 2012, S204503.) On November 9, 2012, after the California Supreme Court denied review of *McKee II*, the trial court in the instant case again ordered Willmes committed to the Department for an indeterminate term under the SVPA.

In the present appeal, Willmes contends that a commitment for an indeterminate term under the SVPA violates the equal protection clauses of the federal and state Constitutions.

As we will discuss, we conclude that Willmes's equal protection claim lacks merit for the reasons stated in *McKee II*. We will therefore affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, the People filed a petition to commit Willmes under the SVPA. Willmes's qualifying offense involved the 11-year-old daughter of his girlfriend. In 1992, when Willmes was 19, the daughter reported to the police that she and her mother had been living with Willmes. Willmes took showers with the daughter and washed her breasts, vaginal area, and buttocks with his hands or a wash cloth for such a long period of time that it became painful to her; bit her buttocks leaving a mark that would last up to

---

[2] By order of February 20, 2013, this court has taken judicial notice of the opinion in defendant's prior appeal, *Willmes*, *supra*, H034656. Our summary of the factual and procedural background includes some information that we have taken from the prior opinion.

a week; inserted his finger in her rectum; yelled at her to stand still or commanded her to spread her legs to facilitate the contact; threatened to spank her if she did not stay in the shower; kept her from leaving the shower; and had sexual intercourse in the shower with the mother while the daughter was present. Willmes was convicted of violating Penal Code section 288, subdivision (a) as a result of his conduct with the daughter.

In August 2009, a jury found the petition alleging that Willmes was an SVP within the meaning of section 6600 to be true. The trial court thereafter filed an order committing Willmes to the Department for appropriate treatment and confinement for an indeterminate term pursuant to section 6604.

In his prior appeal, Willmes contended, among other things, that an SVP is similarly situated with a person committed as a mentally disordered offender (MDO; Pen. Code, § 2960 et seq.) and a person found not guilty of a criminal offense by reason of insanity (NGI; Pen. Code, § 1026), and that the commitment of an SVP for an indeterminate term violates equal protection. This court reversed the judgment and remanded the case to the trial court "for reconsideration of Willmes's equal protection argument in light of *People v. McKee* (2010) 47 Cal.4th 1172, and the resolution of the proceedings on remand in that case (*id*. at pp. 1208-1211), including any proceedings in the Superior Court of San Diego County in which McKee may be consolidated with related matters." (*Willmes*, *supra*, H034656, at p. 27.) This court further ordered the trial court to "suspend further proceedings in this case pending finality of the proceedings on remand in *McKee*. 'Finality of the proceedings' shall include the finality of any subsequent appeal and any proceedings in the California Supreme Court." (*Willmes*, *supra*, H034656, at p. 27.)

On November 9, 2012, after the California Supreme Court denied review of *McKee II*, the trial court in the instant matter again ordered Willmes committed to the Department for an indeterminate term under the SVPA. Willmes filed a notice of appeal.

3

### III. DISCUSSION

#### A. *Brief Overview of the SVPA*

The SVPA provides for the involuntary civil commitment, for treatment and confinement, of an individual who is found by a unanimous jury verdict (§ 6603, subds. (e) & (f)), and beyond a reasonable doubt (§ 6604), to be a "sexually violent predator" (*ibid.*).  The definition of an SVP is set forth in section 6600, subdivision (a)(1) as follows:  " 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

The SVPA was amended twice in 2006.  Prior to those amendments, an individual determined to be an SVP was committed to the custody of the Department for a two-year term.  The individual's term of commitment could be extended for additional two-year periods.  (Former § 6604, as amended by Stats. 2000, ch. 420, § 3; former § 6604.1, as amended by Stats. 2000, ch. 420, § 4.)

On September 20, 2006, the Governor signed into law Senate Bill 1128, which amended the SVPA effective immediately.  (Stats. 2006, ch. 337, § 62.)  Among other changes, the amended SVPA provided for an indeterminate term of commitment, and the references to two-year commitment terms and extended commitments in sections 6604 and 6604.1 were eliminated.  (Stats. 2006, ch. 337, §§ 55, 56.)

Less than two months later, voters approved Proposition 83, which amended the SVPA effective November 8, 2006.  (See Cal. Const., art. II, § 10, subd. (a).)  Like Senate Bill 1128, Proposition 83 amended the SVPA to provide that an SVP's commitment term is "indeterminate."  (§ 6604; see § 6604.1.)  Proposition 83 also eliminated all references to a two-year term of commitment and most references to an extended commitment in sections 6604 and 6604.1.  Thus, a person found to be an SVP

under the SVPA is now subject to an indeterminate term of involuntary civil commitment. (*People v. Whaley* (2008) 160 Cal.App.4th 779, 785-787.)

## B. *Equal Protection*

Willmes contends that a commitment for an indeterminate term under the SVPA violates the equal protection clauses of the federal and state Constitutions and that the order committing him for an indeterminate term should be reversed. According to Willmes, in *McKee I* the California Supreme Court held that "the commitment scheme under the amended SVP Act potentially violated equal protection because SVP's were treated more harshly than persons involuntarily committed under similar commitment schemes, such as [MDO's] and [NGI's]." Willmes further argues that *McKee II*, in which the appellate court found no equal protection violation, is "flawed" in several respects.

### 1. *McKee I*

In *McKee I*, our Supreme Court determined that SVP's and MDO's are similarly situated for equal protection purposes because they have been involuntarily committed with the objectives of treatment and protection of the public. (*McKee I*, *supra*, 47 Cal.4th at p. 1203.) The court also determined that SVP's have "different and less favorable procedural protections" than MDO's because "SVP's under the amended [SVPA] are given indeterminate commitments and thereafter have the burden to prove they should be released (unless the [Department] authorizes a petition for release). In contrast, an MDO is committed for a one-year period and thereafter has the right to be released unless the People prove beyond a reasonable doubt that he or she should be recommitted for another year." (*Id*. at p. 1202.) The court rejected the appellate court's finding that "the legislative findings recited in the [Proposition 83] ballot initiative" were sufficient to justify the disparate treatment of SVP's and MDO's. (*Id*. at p. 1207.)

The California Supreme Court found that SVP's and NGI's are also similarly situated and "a comparison of the two commitment regimes raises similar equal

5

protection problems . . . ." (*McKee I, supra*, 47 Cal.4th at p.1207.)  Consequently, the court agreed with the defendant "that, as with MDO's, the People have not yet carried their burden of justifying the differences between the SVP and NGI commitment statutes." (*Ibid.*)

However, in *McKee I*, the California Supreme Court did "not conclude that the People could not meet its burden of showing the differential treatment of SVP's is justified." (*McKee I, supra*, 47 Cal.4th at p. 1207.)  The court gave the People "an opportunity to make the appropriate showing on remand," noting that the People would have to show that "notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*Id.* at p. 1208.)

The *McKee I* court then remanded the case with the following instructions:  "We therefore remand this case to the trial court to determine whether the People, applying the equal protection principles articulated in [*In re Moye* (1978) 22 Cal.3d 457 (*Moye*)] and related cases discussed in the present opinion, can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment.  The trial court may, if appropriate, permit expert testimony.  [¶]  . . .  On remand, the government will have an opportunity to justify Proposition 83's indefinite commitment provisions, at least as applied to McKee, and demonstrate that they are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate.  [¶]  Moreover, we emphasize that mere disagreement among experts will not suffice to overturn the Proposition 83 amendments.  The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial.

6

The trial court is to determine not whether the statute is wise, but whether it is constitutional." (*McKee I*, *supra*, 47 Cal.4th at pp. 1208-1211, fns. omitted.)

## 2. *McKee II*

On remand in *McKee I,* "the trial court conducted an evidentiary hearing to determine whether the People could justify the [SVPA's] disparate treatment of SVP's under the strict scrutiny standard for equal protection claims. At the hearing, the People presented the testimony of eight witnesses and documentary evidence. The trial court also allowed McKee to present evidence; he presented the testimony of 11 witnesses and documentary evidence. The court issued a 35-page statement of decision summarizing the extensive testimonial and documentary evidence presented at the hearing and finding the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the [SVPA] was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*McKee II, supra,* 207 Cal.App.4th at p. 1332.)

McKee appealed, and Division One of the Fourth Appellate District affirmed the trial court's order. (*McKee II, supra,* 207 Cal.App.4th at pp. 1330-1331, 1350.) In *McKee II*, the appellate court explained that it would "independently determine whether the People presented substantial, factual evidence to support a reasonable perception that SVP's pose a unique and/or greater danger to society than do MDO's and NGI's, thereby justifying the disparate treatment of SVP's under the [SVPA]." (*Id.* at p. 1338.)

After performing its independent review of the evidence presented in the 21-day evidentiary hearing held in the trial court (*McKee II, supra,* 207 Cal.App.4th at p. 1330), the *McKee II* court made several findings. First, with respect to recidivism, the court determined that the expert witness testimony of three psychologists, as well several studies and the Static-99 data comparing recidivism rates, was sufficient to show that "the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely than recidivism of sex offenders generally, but does not show SVP's have, in

fact, a higher sexual recidivism rate than MDO's and NGI's. . . . Regardless of the shortcomings or inadequacy of the evidence on actual sexual recidivism rates, the Static-99 evidence . . . supports, by itself, a reasonable inference or perception that SVP's pose a higher *risk* of sexual reoffending than do MDO's or NGI's." (*McKee II*, *supra*, at p. 1342.)

The Static-99 evidence included in the Department's data showed that the average Static-99 score for all SVP's civilly committed since 2006 was 6.19, which placed them in the " 'high' risk category for sexual reoffense." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1341.) In contrast, the average Static-99 score for MDO's at Patton State Hospital subject to sex offender registration under Penal Code section 290 in 2010 was 3.6, "placing them in the 'moderate-low' risk category for sexual reoffense." (*Ibid*.) The average Static-99 score for all patients discharged from Atascadero State Hospital since January 1, 2010, and subject to sex offender registration, including MDO's and NGI's, was 4.6, which placed them in the " 'moderate-high' risk category for sexual reoffense." (*Id*. at pp. 1341-1342.)

Second, the *McKee II* court considered whether the People had "presented evidence that the victims of sex offenses suffer unique and, in general, greater trauma than victims of nonsex offenses." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1342.) Based on the expert witness testimony, the court concluded that "there is substantial evidence to support a reasonable perception by the electorate, as a legislative body, that the harm caused by child sexual abuse and adult sexual assault is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection." (*Id*. at pp. 1343-1344.)

Third, the *McKee II* court found that there was "substantial evidence to support a reasonable perception by the electorate that SVP's have significantly different diagnoses

8

from those of MDO's and NGI's,[3] and that their respective treatment plans, compliance, and success rates are likewise significantly different. That evidence and the evidence on recidivism . . . , as the trial court found, 'supports the conclusion that, as a class, SVP's are clinically distinct from MDO's and NGI's and that those distinctions make SVP's more difficult to treat and more likely to commit additional sexual offenses than are MDO's and NGI's.' In particular, SVP's are less likely to participate in treatment, less likely to acknowledge there is anything wrong with them, and more likely to be deceptive and manipulative. . . . Furthermore, there is substantial evidence to support a reasonable inference that an indeterminate, rather than a determinate (e.g., two-year), term of civil commitment supports, rather than detracts from, the treatment plans for SVP's." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.)

The appellate court therefore concluded in *McKee II* that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended [SVPA's] disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). [Citation.]" (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) Accordingly, the trial court's order rejecting the defendant's equal protection claim and affirming his indeterminate commitment under the SVPA was upheld. (*Id*. at p. 1350.) The California Supreme Court denied review of *McKee II* on October 10, 2012, and therefore the proceedings on remand in *McKee I* are now final.

---

[3] Dr. David Fennell, a psychiatrist and the chief of forensics at Atascadero State Hospital, testified that "MDO's and NGI's with a sexual predicate offense were not more likely to commit a new sexual offense (versus another dangerous offense) on release because their mental disorders made them disorganized and unpredictable. In comparison, SVP's are more likely to commit a new sexual offense because of their diagnoses with pedophilia or other paraphilias." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1345.)

9

Willmes urges this court to not follow *McKee II* because the decision is "flawed in three respects."  The first error, according to Willmes, is that the *McKee II* court failed to properly conduct a de novo review of all of the evidence presented by parties because the court ignored McKee's evidence and accepted the People's evidence as accurate.  Second, Willmes argues that the *McKee II* court misapplied the strict scrutiny test, because under that test, the People had the burden of showing that SVP's are actually more dangerous as class, and therefore it was insufficient to show that that the legislature or voters could reasonably believe that SVP's were more dangerous as a class.  Third, Willmes asserts that when the strict scrutiny test is properly applied, the evidence presented by the People was not sufficient to show that the disparate treatment of SVP's is justified.

The People contend that the California Supreme Court's decision in *McKee I* and subsequent stay orders "demonstrate its intention that state courts, upon finality of *McKee* [*I*], treat the factual and legal conclusions on the equal protection claim in *McKee II* as binding, unless and until a higher court directs otherwise."

We are not convinced by Willmes's argument that *McKee II* was wrongly decided and should not be followed.

First, we disagree with Willmes's claim that the *McKee II* court applied a deferential standard of review rather than an independent standard of review.  Willmes acknowledges that the appellate court stated that it was conducting a de novo review (*McKee II, supra,* 207 Cal.App.4th at p. 1338), but he points out that the appellate court also stated that it was determining "whether the People presented substantial evidence to support a reasonable inference or perception that the Act's disparate treatment of SVP's is necessary to further compelling state interests.  [Citations.]"  (*Id.* at p. 1339.)  Having reviewed the opinion, we believe the *McKee II* court's description of its review is consistent with an independent, de novo review of the evidence, as well as with the Supreme Court's opinion and directions in *McKee I.*  We also note that the First District

10

Court of Appeal rejected a similar challenge to *McKee II,* stating that the "claim that the appellate court failed to independently review the trial court's determination is frivolous." (*People v. McKnight* (2012) 212 Cal.App.4th 860, 864.)

Second, we reject Willmes's claim that in *McKee II* the People had the burden of showing that SVP's are actually more dangerous as class, and that the *McKee II* court applied a rational basis test rather than a strict scrutiny test in reviewing the evidence presented at the hearing. The *McKee II* court clearly understood that the strict scrutiny test required the government to "show both a compelling state interest justifying the disparate treatment *and* that the disparate treatment is necessary to further that compelling state interest. [Citations.]" (*McKee II, supra,* 207 Cal.App.4th at p. 1349.) Further, specific to the case before it, the *McKee II* court referred to the issue as "whether the People presented substantial evidence to support a reasonable inference or perception that the Act's disparate treatment of SVP's is necessary to further compelling state interests. [Citations.]" (*Id.* at p. 1339.) The appellate court's use of the phrase "reasonable inference or perception" (*ibid.*) reflects the California Supreme Court's remand instructions in *McKee I.* In *McKee I,* the California Supreme Court stated, "[T]he government has not yet shown that the special treatment of SVP's is validly based on the degree of danger *reasonably perceived* as to that group, nor whether it arises from any medical or scientific evidence. On remand, the government will have an opportunity to justify Proposition 83's indefinite commitment provisions . . . and *demonstrate that they are based on a reasonable perception of the unique dangers that SVP's pose rather than a special stigma that SVP's may bear in the eyes of California's electorate.* [¶] . . . The trial court must determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not whether they are incontrovertible or uncontroversial." (*McKee I, supra,* 47 Cal.4th at pp. 1210-1211, italics added, fn. omitted.) Thus, in applying the strict scrutiny test, *McKee II* followed the language set forth in *McKee I.*

11

In purportedly misapplying the strict scrutiny test, Willmes also contends that the *McKee II* court improperly "rejected the need for the government" to "show that the disparate treatment of SVP's constituted the least restrictive means possible." We are not persuaded by Willmes's contention. The *McKee I* court, quoting from *Moye*, *supra*, 22 Cal.3d at page 465, articulated the strict scrutiny test as follows: " 'the state must establish both that it has a "compelling interest" which justifies the challenged procedure and that the distinctions drawn by the procedure are necessary to further that interest.' " (*McKee I*, *supra*, 47 Cal.4th at pp. 1197-1198.) In remanding the case in *McKee I*, the California Supreme Court instructed the trial court to "apply[] the equal protection principles articulated in *Moye* and related cases discussed in the [*McKee I*] opinion" (*McKee I*, *supra*, at p. 1208), and to determine whether, after a trial, the People had shown that imposing on SVP's greater burdens to obtain release from commitment is necessary to promote the state's compelling interests in public safety and humane treatment of the mentally ill (*id.* at pp. 1207-1211). Given the evidence presented in *McKee II* – that the vast majority of SVP's are diagnosed with pedophilia or other paraphilias, that a paraphilia ordinarily persists throughout a patient's lifetime, that treatment is not focused on medication, and that most SVP's do not participate in treatment (*McKee II, supra,* 207 Cal.App.4th at pp. 1344-1345) – we have no basis for concluding that an indeterminate term is not necessary to further the compelling state interest in providing treatment to SVP's and protecting the public or that there is any less burdensome alternative to effectuate those interests.

Third, we are not persuaded by Willmes's contention that the evidence presented by the People in *McKee II* was insufficient to show that SVP's were more dangerous than MDO's and NGI's and thus that harsher treatment was necessary.

For example, Willmes claims that the *McKee II* court "acknowledged that the government had failed to show that SVP's had a higher sexual recidivism rate than MDO's or NGI's, but nevertheless concluded that the evidence 'supports, by itself, a

12

reasonable inference or perception that SVP's pose a higher *risk* of sexual reoffending than do MDO's or NGI's.' (*McKee II*, *supra*, [207 Cal.App.4th at] p. 1342, emphasis in original.)" In reaching this inference, *McKee II* relied on evidence that the scores on the Static-99 test, which assesses the *risk* that a sex offender will commit new sex offenses, was higher for SVP's than for non-SVP sex offenders. (*McKee II*, *supra*, at pp. 1340-1342.) The California Supreme Court in *McKee I* suggested that evidence concerning a greater *risk* of recidivism by SVP's was one type of evidence that the People might present to show that "notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*McKee I*, *supra*, 47 Cal.4th at p. 1208.) *McKee II* thus followed *McKee I*.

Willmes also claims that *McKee II* reached its conclusion that victims of sexual abuse suffer greater trauma without any evidence regarding the trauma caused by non-sex offenses. We disagree. The evidence relied on by the *McKee II* court included testimony that "[s]exual trauma differs qualitatively from other traumas because of its intrusiveness and long-lasting effects," and that "[d]ysfunction, disassociation and avoidance problems after sexual trauma are unique to sexual abuse and are not seen in victims of physical or other types of abuse." (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1342, 1343.)

Willmes further claims that the evidence concerning differences in diagnoses, treatment, compliance, and success rates between SVP's and MDO's or NGI's did not support the conclusion in *McKee II* that harsher treatment of SVP's was necessary. We are not persuaded by Willmes's argument. To the extent conflicting evidence was introduced at the trial, the People's burden was to show that "the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based—not [that] they are incontrovertible or uncontroversial." (*McKee I*, *supra*, 47 Cal.4th at pp. 1210-1211; accord, *McKee II*, *supra*, 207 Cal.App.4th at p. 1348.)

13

Lastly, Willmes asserts that "there were three separate but related elements that were under attack in McKee's equal protection challenge," that is, the indeterminate term of commitment, the elimination of the right to a jury trial periodically, and the shifting of the burden of proof. Willmes argues that "[t]he evidence presented in *McKee II* did not address the latter two issues." This argument is without merit. Following independent review of the evidence, *McKee II* concluded that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the [SVPA's] disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released)," and that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand." (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1347, 1348.)

Having concluded for the reasons stated above that none of Willmes's contentions on appeal have merit, we will affirm the judgment.

14

## IV.  DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.