Filed 7/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS EARL PUTNEY,<br><br>    Defendant and Appellant. | A142012<br><br>(Sonoma County<br>Super. Ct. No. SCR18094) |

Thomas Putney appeals from an order recommitting him to the State Department of State Hospitals (SDSH) for an indeterminate term after a jury found him to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA).[1] During the pendency of the SVP proceeding, Putney was sentenced to 25 years to life in prison for an intervening criminal offense. We conclude that the trial court lacked authority to recommit Putney as an SVP once his sentence for the intervening criminal conviction became final, and we therefore reverse the order with directions to dismiss the recommitment petition.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

During the summer of 1990, Putney sexually molested his two- and four-year-old cousins, with whom he lived at the time, and a nine-year-old neighbor. The following year, he pleaded no contest to three felony counts of lewd acts on a child under age 14

---

[1] Welfare and Institutions Code, section 6600 et sequitur. Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

based on his offenses against the four- and nine-year-old, and he was sentenced to 10 years in prison.[2]

In October 2002, shortly before Putney was due to be released on parole, the People filed a petition seeking his commitment to a state hospital as an SVP.[3] He admitted to the petition's allegations, and in February 2003 the trial court committed him to Atascadero State Hospital for two years. At the end of the two-year term, the People did not seek to recommit Putney as an SVP, and he was released on parole in February 2005. He moved several times due to public outcry about his presence, became suicidal, and sought help from his parole officer. Putney returned to prison in approximately August 2005 after no other facility would accept him, and his parole was revoked "based upon [the] psychiatric return."

In September 2005, about a month before Putney was due to be released, the People filed a second petition seeking his commitment to a state hospital as an SVP. He did not contest the petition, and the following month the trial court committed him to Atascadero for another two-year term. The People filed the instant petition to recommit Putney as an SVP in July 2007, a few months before the expiration of that two-year term. In February 2008, the trial court found that the petition established probable cause to believe that Putney was an SVP, and a jury trial was set for later that spring.

The SVP trial was continued many times and ultimately did not begin until April 2014, almost seven years after the recommitment petition was filed. Only one of the many reasons for the delay is relevant to the resolution of this appeal: in November 2010, Putney was charged with a felony count of possession of a dirk and dagger based on an incident at Coalinga State Hospital, where he was then housed. (*People v. Putney*

---

[2] Putney was convicted under Penal Code section 288, subdivision (a).

[3] Putney served an additional two years after he was convicted of possessing a weapon while in prison under Penal Code section 4502.

(July 2, 2012, F062165) [nonpub. opn.].)[4] He pleaded no contest to the charge and admitted three prior convictions for a serious or violent felony (strikes). (*Ibid.*) A Fresno County trial court sentenced him to 25 years to life in prison in late January 2011. (*Ibid.*) The Fifth District Court of Appeal affirmed the criminal judgment on July 2, 2012, and, after our state Supreme Court denied review, the remittitur issued on September 27, 2012. (California Courts, Appellate Courts Case Information <http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=5&doc_id=1975541 &doc_no=F062165> [as of July 27, 2016].)

Although our record does not contain any reporter's transcripts from the hearings that occurred in this proceeding while the criminal case was pending, the minute orders make clear that the trial court was aware of that case. The same day that Putney committed the weapons-possession offense, the court vacated the then-scheduled SVP trial date. Minute orders entered in December 2010 noted that Putney was in Fresno County Jail, and a minute order entered the week after he was sentenced in the criminal case the following month noted that he was "in custody in another county (25 years to life)." Finally, while Putney's criminal appeal was pending, the court continued this case for an update on the "appeal or writ on Fresno County case." (Some capitalization omitted.) While the record thus reveals that the court was aware of the criminal case, it does not reflect that the parties and court ever discussed the propriety of proceeding to trial despite the criminal case's disposition.

---

[4] On our own motion, we take judicial notice of the Fifth District Court of Appeal's opinion in the appeal of Putney's criminal case. (See *People v. Hill* (1998) 17 Cal.4th 800, 847 [taking judicial notice of unpublished decision in separate case].) In doing so, we take judicial notice of the prior case's procedural history but not the truth of any facts involving the underlying charge. (See *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564-1565.) We also take judicial notice of the Fifth District docket. (California Courts, Appellate Courts Case Information <http://appellatecases.courtinfo.ca.gov/search/case/ dockets.cfm?dist=5&doc_id=1975541&doc_no=F062165> [as of July 27, 2016]; see *Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1347 & fn. 3 [taking judicial notice of Court of Appeal docket].)

At trial, two psychologists, Drs. Jack Vognsen and Harry Goldberg, testified as experts for the People. Both diagnosed Putney with pedophilia, and both identified other disorders contributing to his impaired ability to control his behavior, including antisocial personality disorder and substance-abuse disorder. They concluded that Putney was substantially likely to reoffend if released from custody, although both acknowledged that due to his criminal sentence he would not be released for many years. Two other psychologists, Drs. Robert Halon and Jay Adams, testified as experts for the defense and concluded that Putney did not have pedophilia because there was no evidence he was currently attracted to children. The jury found that Putney was an SVP, and the trial court committed him to Coalinga for an indeterminate term.[5]

## II.
## DISCUSSION

We requested supplemental briefing from the parties on whether Putney was properly recommitted as an SVP despite having a decades-long prison term left to serve. We conclude that the trial court should have dismissed this action after the criminal sentence became final. Although Putney joins the Attorney General in contending that the sentence did not prevent his recommitment, we decline to accept this concession because it is completely at odds with the SVPA's language and purposes and would send a faulty message that trial courts may commit criminal defendants under the SVPA years before their sentences of incarceration are set to end.[6] (See *People v. Sanders* (2012) 55 Cal.4th 731, 740.)

---

[5] Putney testified at trial that he was then housed in the California Medical Facility (CMF), which, unlike Coalinga, is under the jurisdiction of the Department of Corrections and Rehabilitation. (Pen. Code, § 5003, subd. (f); see also *People v. Watson* (2007) 42 Cal.4th 822, 828-829.) According to his appellate counsel, Putney is still at CMF, and it is unclear whether he was ever transferred to Coalinga or whether his placement there was ever determined to be inappropriate. (See § 6600.05, subd. (a) [an SVP must be placed at Coalinga "unless there are unique circumstances that would preclude the placement of a person at that facility"].)

[6] In light of our holding, we need not rule on the numerous claims Putney raises in this appeal.

4

A.      *The SVPA.*

Under the SVPA, an offender who is determined to be an SVP is subject to involuntary civil commitment for an indeterminate term " 'immediately upon release from prison.' " (*People v. Yartz* (2005) 37 Cal.4th 529, 534; § 6604.)  To establish that an offender is an SVP, the People must prove beyond a reasonable doubt that the offender (1) has been convicted of a sexually violent offense against at least one victim and (2) "has a diagnosed mental disorder that makes [him or her] a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§§ 6600, subd. (a)(1), 6604.)  The SVPA is designed " 'to provide "treatment" to mentally disordered individuals who cannot control sexually violent criminal behavior' " and to keep them confined until they no longer pose a threat to the public.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1194.)  Thus, "[t]he SVPA is not punitive in purpose or effect," and proceedings under it are " 'special proceedings of a civil nature.' " (*Yartz*, at pp. 535-536.)

Originally, the SVPA provided for a two-year term of commitment (former § 6604), and any extension required the People to file a petition for recommitment for another two-year term.  (Former §§ 6604, 6604.1, subd. (a); *Moore v. Superior Court* (2010) 50 Cal.4th 802, 817.)  On November 7, 2006, California voters passed Proposition 83, which amended the SVPA effective the following day.  (*People v. McKee*, *supra*, 47 Cal.4th at p. 1186.)  Among other changes, Proposition 83 altered "an SVP commitment from a two-year term to an indefinite commitment."  (*McKee*, at p. 1186.)  Under the previous scheme, a subsequent petition to extend an offender's commitment required a new trial to prove that the offender was an SVP.  (*Id.* at p. 1194; former § 6604.)  But "[a]fter Proposition 83, once a person is committed as an SVP, he [or she] remains in custody until he [or she] successfully bears the burden of proving he [or she] is no longer an SVP"—through a petition for unconditional discharge under section 6605 or conditional release under section 6608—"or the [SDSH] determines he [or she] no longer meets the definition of an SVP." (*Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1287 (*Bourquez*).)  "The purpose of the change was 'to protect the

civil rights of those persons committed as [an SVP] while at the same time [to] protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person.' [Citation.] The change also served to reduce costs for SVP evaluations and court testimony." (*Ibid.*)

As amended by Proposition 83, "the SVPA no longer contains any express statutory provision authorizing recommitment of a person previously committed . . . for treatment as an SVP." (*People v. Castillo* (2010) 49 Cal.4th 145, 150.) Despite this, trial courts retain jurisdiction to consider a petition for recommitment for an indeterminate term that, like the petition here, was filed after Proposition 83 became effective. (*People v. Whaley* (2008) 160 Cal.App.4th 779, 798-799; *Bourquez, supra*, 156 Cal.App.4th at p. 1280; *People v. Shields* (2007) 155 Cal.App.4th 559, 561, 564.) In such circumstances, an offender previously committed for a two-year term is entitled to another trial at which the People must prove the offender is an SVP. (*Whaley*, at p. 803.)

B.       *The Petition Should Have Been Dismissed After Putney's Criminal Sentence Became Final.*

The parties contend that nothing in the SVPA prevented Putney from being recommitted as an SVP despite his Three Strikes sentence remaining to be served. We disagree and conclude the trial court acted in excess of its jurisdiction by entering the recommitment order.

"Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' [Citation.] [¶] However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.]

6

' "[When] a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660-661.) Thus, as relevant here, "when a statute establishes prerequisites for maintenance of a civil commitment procedure, a . . . court's jurisdiction or power to enter an order of commitment depends on compliance with those prerequisites." (*People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383, 1387-1388.)

We begin by accepting that the petition seeking Putney's recommitment for an indeterminate term was proper when filed in July 2007. As we have said, it is settled that such petitions filed after Proposition 83 became effective are authorized. (See *People v. Whaley*, *supra*, 160 Cal.App.4th at pp. 798-799, 803; *Bourquez*, *supra*, 156 Cal.App.4th at p. 1280; *People v. Shields*, *supra*, 155 Cal.App.4th at pp. 561, 564.) The People filed the petition before the expiration of Putney's previous two-year term, as required, and there is no other issue involving the trial court's jurisdiction to consider the petition initially. (See *Whaley*, at p. 804 [normally, "only act that may deprive a court of jurisdiction is the People's failure to file a petition for recommitment before the expiration of the prior commitment"].)

Because we accept that Putney's petition was proper when it was filed, we have no quibble with the parties' position that section 6601, subdivision (a) did not prevent the commencement of this proceeding. Under that provision, "[w]henever the Secretary of the Department of Corrections and Rehabilitation determines that an individual who is in custody under the jurisdiction of the Department of Corrections and Rehabilitation, and who is either serving a determinate prison sentence or whose parole has been revoked, may be a sexually violent predator, the secretary shall, at least six months prior to that individual's scheduled date for release from prison, refer the person for evaluation in accordance with this section. . . . [¶] A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed." (§ 6601, subd. (a)(1)-(2).) Although section 6601, subdivision (a) thus does not

7

cover offenders already committed as SVPs, based on the previously cited authorities the statute does not bar post-Proposition 83 recommitment petitions.

It was also proper for the trial court to continue this proceeding while the criminal case was pending. "[O]nce a petition is filed, there is no additional time limit on the time in which the allegations of the petition must be tried." (*People v. Superior Court (Preciado)* (2001) 87 Cal.App.4th 1122, 1127.) A delay in bringing an alleged SVP to trial that is "based upon the state's failure to allocate sufficient resources to provide a timely trial" may constitute a denial of due process, requiring dismissal of the petition. (*People v. Castillo*, *supra*, 49 Cal.4th at pp. 166-169, discussing *People v. Litmon* (2008) 162 Cal.App.4th 383.) Here, however, Putney has not sought relief on such grounds despite the almost seven-year delay between the petition's filing and the beginning of trial. And we see no error in the court's delaying the proceeding until the criminal case was adjudicated. Generally speaking, criminal proceedings take precedence over civil matters (see Pen. Code, § 1050), and the court's decision to continue this case is consistent with our ultimate conclusion that a person serving a long prison term cannot simultaneously be committed as an SVP.

In short, the trial court had fundamental jurisdiction over the recommitment petition and retained jurisdiction after the criminal case was initiated. As we now explain, however, once the criminal sentence became final, the court "lack[ed] . . .

authority under the law to grant the particular relief requested" in the petition. (*In re Stier* (2007) 152 Cal.App.4th 63, 77.)[7]

The main reason the trial court lacked authority is because, contrary to the parties' position, an offender who has no prospect of being released from custody for many years does *not* meet the definition of an SVP since the offender poses no danger to the public. Under section 6600, subdivision (a)(1), " '[s]exually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." As the SVPA makes clear, "others" refers to members of the public, not prison staff or fellow inmates: the issue for both the judge to decide at the probable-cause hearing and the factfinder to decide at trial is whether the person is likely to engage in sexually violent behavior "*upon his or her release* from the jurisdiction of the Department of Corrections and Rehabilitation or other secure facility." (§ 6602, subd. (a), italics added; see also CALCRIM No. 3454 ["A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger, that is, a serious and well-founded risk that the person will engage in such conduct if released into the community"].) Indeed, as the Legislature stated in enacting the SVPA, the statute's "primary purpose is to protect *the public* from 'a small but extremely dangerous group of

---

[7] Neither of the primary consequences of a judgment's being voidable because it was in excess of jurisdiction, as opposed to being void for want of fundamental jurisdiction, is implicated here. First, although " '[a trial] court's act in excess of its jurisdiction is valid until set aside, and a party *may* be precluded from setting it aside, due to waiver, estoppel or the passage of time' " (*In re Stier*, *supra*, 152 Cal.App.4th at p. 77, italics added), nothing *prevents* us from considering for the first time on appeal " 'a pure question of law which is presented by undisputed facts,' " particularly a question, like the one presented here, that "fundamentally affects the validity of the judgment." (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 907-908; see also *In re Stier*, at pp. 74-81.) Second, merely voidable judgments "should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final," but this distinction has no effect in a direct appeal. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 661.)

sexually violent predators that have diagnosable mental disorders [that] can be identified while they are incarcerated.' " (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1192, italics added; see also Stats. 1995, ch. 763, § 1 [SVPs "are not safe to be at large" and are "a continuing threat to society"].)  Consistent with this statutory language and purpose, numerous decisions have characterized SVPs as those who pose a danger if released into the community.  (E.g., *People v. Roberge* (2003) 29 Cal.4th 979, 988; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 922; see also *People v. Buffington* (1999) 74 Cal.App.4th 1149, 1162 [SVPA "deal[s] exclusively with prison inmates who have completed their sentences and who may be subject to involuntary confinement for mental health treatment"].)  Thus, the SVPA does not contemplate the commitment of people, like Putney, who pose no danger to the public because they have long prison terms left to serve.

Moreover, the commitment of such people is flatly inconsistent with other provisions of the SVPA involving the possibility of release.  The statute provides that an SVP's mental condition is to be evaluated annually to permit the director of the SDSH to determine whether "the person's condition has so changed that the person no longer meets the definition of [an SVP] and should, therefore, be considered for unconditional discharge" or whether "conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community." (§ 6604.9, subds. (a)-(b), (d).)  If either is true, the director must authorize the person to file in the trial court a petition for the appropriate form of relief.  (§ 6604.9, subd. (d).)  Even if the director does not recommend unconditional discharge or conditional release, an SVP is entitled to petition for conditional release.  (§ 6608, subd. (a).)  After Proposition 83, these procedures provide "an expedient means for those whose mental condition has improved to obtain either conditional or unconditional release from confinement in a locked facility" despite their indeterminate commitment. (*People v. Smith* (2013) 212 Cal.App.4th 1394, 1403.)  A person who has a long prison term left to serve, however, has no possibility of being either conditionally or unconditionally released from custody, and the statute does not provide any mechanism

10

for reviewing such a person's SVP status. Thus, even if the SVPA could be interpreted to include such a person in the definition of an SVP, the statute provides no means of revisiting that determination and would therefore fail "to ensure that the committed person does not 'remain confined any longer than he [or she] suffers from a mental abnormality rendering him [or her] unable to control his [or her] dangerousness.' " (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1177; *Smith*, at pp. 1398-1399.)

The parties also claim that the SVPA does not explicitly require "the dismissal of a recommitment petition . . . based upon [a] person's conviction and sentencing on a new felony," but this omission does not prevent a trial court from dismissing a petition on such grounds. Our state Supreme Court has recognized that the fact that "[t]he SVPA contains no express provision for judicial review" of a particular legal issue does not necessarily bar a court from considering it. (*People v. Superior Court (Ghilotti)*, *supra*, 27 Cal.4th at p. 910.) Given the SVPA's unambiguous purpose of protecting the public, and the resulting lack of *any* indication that the statute was intended to allow civil commitment of offenders with long prison terms left to serve, we find it of little significance that the statute does not expressly permit a petition to be dismissed based on an intervening conviction. (See *ibid.* [conclusion that trial court had authority to review an issue despite SVPA's failure to expressly confer that authority was "inherent in the statutory scheme, and in the nature of the judicial power"].)

For similar reasons, we are also unpersuaded by the parties' suggestion that the recommitment petition could be adjudicated despite Putney's intervening conviction because, at least as far as provisions for an offender's custodial location and treatment, "[t]here is no statutory impediment to being a dual committee under both the Penal Code and the Welfare and Institutions Code." Even if Putney could be placed at CMF, for example, as either a prisoner serving a Three Strikes sentence or as an SVP, this does not establish that he can have both statuses at once. Again, the SVPA's language and overarching purpose prevent such a conclusion.

Certainly, such a dual commitment is not necessary to vindicate "a secondary objective" of the SVPA, to provide mental health treatment. (*People v. Hurtado*, *supra*,

11

28 Cal.4th at p. 1192.) Any "mentally ill, mentally deficient, or insane person confined in a state prison" may be treated "at any one of the state hospitals under the jurisdiction of the [SDSH]" if such treatment would further the person's "rehabilitation." (Pen. Code, § 2684, subd. (a).) "Unlike a person committed to a state hospital as a mentally disordered offender or [SVP], a prisoner who is transferred pursuant to [Penal Code] section 2684 still is serving a sentence of a term of years in state prison and is confined pursuant to a judgment committing him or her to confinement in the state prison." (*People v. Watson*, *supra*, 42 Cal.4th at pp. 829-830.) Thus, Putney's recommitment as an SVP is not justified as a means of ensuring that he receives mental health treatment while incarcerated.

Finally, we note that the maintenance of this proceeding undermined Proposition 83's purpose of saving time and money by preventing unnecessary trials. (*Bourquez*, *supra*, 156 Cal.App.4th at p. 1287.) Even if we were able to conclude that the SVPA does not technically bar the recommitment of offenders with long prison terms left to serve, we fail to perceive any practical purpose that justified the time, imposition on the jury, and cost required to conduct the trial here, not to mention the additional resources spent prosecuting and resolving this appeal. As testimony from the People's expert witnesses suggested, the trial was aimed at resolving the theoretical question of whether Putney was too dangerous for an imminent release he had virtually no possibility of obtaining. We cannot approve such a pointless exercise.

In concluding that the trial court lacked authority to recommit Putney as an SVP once his criminal sentence became final, we do not suggest that, assuming the relevant law remains the same, the People would be barred from filing a new petition if and when Putney is set to be released from custody. We hold only that at the time the court recommitted him as an SVP, it lacked authority to do so in light of the prison term he had left to serve. We agree with the Attorney General that the consequences of our reversal on this ground are that Putney is "subject only to his prison commitment" and cannot be retried on this petition. (See *People v. Garcia* (2005) 127 Cal.App.4th 558, 567-568.)

12

## III.
### DISPOSITION

The order recommitting Putney as an SVP for an indeterminate term is reversed, and the trial court is directed to dismiss the recommitment petition.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Dondero, J.

13

Trial Court:                                              Sonoma County Superior Court

Trial Judge:                                           Honorable Robert M. LaForge

Counsel for Appellant:                         Ronald R. Boyer
By appointment of the Court of Appeal under the First District Appellate Project

Counsel for Respondent:                      Kamala D. Harris
Attorney General

Gerald A. Engler
Chief Assistant Attorney General

Jeffrey M. Laurence & Laurence K. Sullivan
Supervising Deputy Attorneys General

Bridget Billeter
Deputy Attorney General