Filed 12/15/20  P. v. Wilson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARK WILSON,<br><br>    Defendant and Appellant. | B299859<br><br>(Los Angeles County<br>Super. Ct. No. ZM003215) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul A. Sahugun, Judge.  Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Stephanie A. Miyoshi, Deputy Attorney General for Plaintiff and Respondent.

————————

Following a bench trial the superior court found Mark Wilson was a sexually violent predator (SVP) and committed him to the custody of the State Department of State Hospitals (DSH). On appeal Wilson argues the court acted in excess of its jurisdiction by considering the People's SVP petition when there was no likelihood his nearly two-decade-long commitment as a mentally disordered offender would be lifted and he would be released into the community. He also contends the court relied on improper factors in making its ruling and its SVP finding was not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Wilson's Convictions for Sexually Violent Offenses and Civil Commitments*

In September 1977 Wilson, then 18 years old, was hitchhiking when 19-year-old Susan W. offered him a ride. After telling Susan he was a violent person and had recently killed three people, Wilson told her to do what he said and he would not harm her. He raped her in her car, then made her perform oral sex. Susan managed to escape and call police.

Wilson was arrested and charged with rape by threat. Susan told police Wilson had acted as if he were mentally ill. Wilson's father also told police his son was mentally ill. Wilson pleaded guilty as part of a negotiated plea that required him to be assessed as a Mentally Disordered Sex Offender (MDSO) (Welf. & Inst. Code, former § 6300)[1] and provided, if he did not qualify, he would be placed on five years' probation with the

---

[1] Statutory references are to this code unless otherwise stated.

condition he serve one year in the county jail.[2]  After a hearing and finding Wilson did not meet the criteria for commitment as an MDSO, the court suspended execution of sentence, including the one-year term in county jail, and placed Wilson on probation for five years.

In 1981 Wilson grabbed Theresa S., pulled her into a church, threatened to kill her if she gave him any trouble, and forced her to perform oral sex.  Following his arrest Wilson told police he had sexual problems and he had fantasies of raping frightened women.  In March 1981, pursuant to a negotiated agreement, Wilson pleaded guilty to forcible oral copulation.  Under the plea agreement Wilson would either be adjudged an MDSO or serve eight years in prison.  In July 1981, following a MDSO hearing, proceedings were suspended; and Wilson was committed to Patton State Hospital as an MDSO, where he remained until his release in April 1989.

---

[2]     MDSO laws, which authorized civil commitment after conviction of a sex offense for a period not to exceed the maximum term of imprisonment that could have been imposed for the offense (former §§ 6302, 6316.1), were repealed January 1, 1982 (Stats. 1981, ch. 928, § 2). "When it repealed the MDSO scheme, the Legislature provided that individuals then committed as MDSO's and those whose terms of commitment had been extended under the law would remain subject to the provisions of the MDSO law 'until the commitments are terminated and the persons are returned to the court for resumption of the criminal proceedings.'" (*People v. Green* (2000) 79 Cal.App.4th 921, 925; accord, *Baker v. Superior Court* (1984) 35 Cal.3d 663, 667; *Landau v. Superior Court* (2019) 32 Cal.App.5th 1072, 1086, fn. 7.)

In June 1990 Wilson was admitted involuntarily to Metropolitan State Hospital with a diagnosis of bipolar disorder mixed with mood congruent psychotic features. While hospitalized he assaulted a psychiatric technician. He was convicted in 1993 of assault causing great bodily injury and sentenced to nine years in state prison.

In May 1999 Wilson was found to be a mentally disordered offender (MDO) (Pen. Code, § 2962), committed to the custody of DHS and transferred to Atascadero State Hospital. Wilson has remained in DHS custody ever since, with continuous extensions of his MDO commitment.

2. *Petition for Commitment as an SVP*

In May 1999 the People filed a petition to commit Wilson as an SVP within the meaning of the Sexually Violent Predator Act (SVPA) (§ 6600 et seq.) Following a hearing in November 2004 the court found probable cause to support the petition. Trial was continued or stayed multiple times over the years, all at Wilson's requests.[3]

In June and July 2019 a court trial was held on the petition to commit Wilson as an SVP for a period of two years.[4]

---

[3] Wilson does not challenge the delay between the filing of the petition and the trial.

[4] At the time the SVP petition was filed, former section 6604 limited the civil commitment to two years, subject to renewal by the People. (See Stats. 1995, ch. 763, § 3; *People v. McKee* (2010) 47 Cal.4th 1172, 1186.) In 2006 the SVPA was amended by legislation, and later that year by Proposition 83, a ballot measure approved by the voters on November 7, 2006 ("Jessica's Law"), to replace the two-year commitment term with an

3. *The SVP Trial*
  a. *The People's evidence*

The People provided expert testimony from two psychologists, Drs. Michael Musacco and Christopher Matosich.

Dr. Musacco, a licensed clinical forensic psychologist, has evaluated, diagnosed and treated sex offenders for more than 30 years. He currently works under contract with DSH to evaluate whether an individual meets the criteria for classification as an SVP or MDO. Dr. Musacco evaluated Wilson in 2012, 2014, 2017 and 2018. Evaluations consisted of review of Wilson's criminal record (including arrest and probation reports documenting the details of the offenses); written reports by other psychologists who were no longer involved in the case; his own interviews with Wilson; and diagnostic assessments, including the Stat-99R assessment, which Dr. Musacco described as "limited," but also "the most widely used and best validated cross validated instrument."

Dr. Musacco opined Wilson suffered from severe mental illness, including schizoaffective disorder with delusional beliefs and auditory hallucinations that interfered with his ability even to make day-to-day decisions. Wilson blamed his mother's hypnotizing powers, as well as voices he heard in his head, for

---

indefinite term of commitment. (See *People v. Castillo* (2010) 49 Cal.4th 145, 149; *People v. Superior Court* (*Vasquez*) (2018) 27 Cal.App.5th 36, 42, fn. 2.) To avoid a lengthy dispute over application of Jessica's Law to then-pending SVP petitions or requests for immediate trial before voters decided on the ballot measure, in 2006 the People stipulated that any order of commitment based on petitions pending prior to the effective date of Jessica's Law, including the petition in the case at bar, would be limited to two years.

5

committing his sexual assault crimes.  His psychosis became worse, not better, over time.  In 2014 Wilson blamed "the voices" for telling him to touch a fellow patient's buttocks.  He told Dr. Musacco he had committed 12 to 18 other rapes, although Dr. Musacco did not necessarily believe those statements.  Wilson also told Dr. Musacco he would not rape again, in part because the cell phone that had been implanted in his body had been removed.[5]

Based on his own evaluation of Wilson and the descriptions of Wilson's sexual offenses contained in his criminal record, Dr. Musacco opined Wilson also suffered from other specified paraphilic disorder/nonconsent (OSPD).  Dr. Musacco defined paraphilia as any "deviant sexual arousal behavior pattern" and OSPD as a specific form of paraphilia in that the perpetrator's arousal is based on coercion of the sexual act.  He acknowledged that OSPD was a controversial diagnosis in that, unlike other forms of paraphilia, it had never been recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM), including the current DSM-5.  He expressly stated rape alone is not a basis to find someone suffers from OSPD/nonconsent; most rapists do not suffer from OSPD/nonconsent; and the sexual urges that inform all forms of paraphilia are diminished by age 60, Wilson's age at the time of the SVP trial.  Nonetheless, Dr. Musacco explained, Wilson's "drive for the sexual behaviors is

---

[5]     Wilson also claimed to have come from "outer space," was personally acquainted with Captain Kirk, had been reincarnated as Abraham Lincoln, and had difficulty obtaining an erection or ejaculating because "Jon Bon Jovi took it [his sperm] out of me . . . humanly and spiritually."

significantly related to the psychosis and his psychosis hasn't diminished one iota from [ages] 40 to 60."

Dr. Musacco opined Wilson posed a serious and well-founded risk for committing a predatory sexual offense if released. Even apart from the Stat-99R scores and the OSPD diagnosis, Dr. Musacco believed, Wilson's severe schizoaffective disorder, combined with his sexual obsessions and difficulty distinguishing fantasy from reality, made him likely to reoffend in a sexually violent way if released into the community.[6]

b. *Wilson's evidence*

Dr. Mary Jane Alumbaugh, a psychologist with more than 30 years experience, works under contract with DSH evaluating individuals for whether they meet the criteria for MDO and/or SVP. Dr. Alumbaugh agreed with Dr. Musacco that Wilson suffered from severe schizoaffective disorder. However, she did not believe that he suffered from OSPD, a controversial diagnosis to which she gave little credit. In any event, there was nothing that led her to believe the sexual turn-on for Wilson was the coercive aspect of the rape and not other aspects of the crime. Dr. Alumbaugh believed Wilson was severely mentally ill; she did not believe, based on her analysis of Wilson's mental health records, criminal records, interviews and performance on the Stat-99R, that Wilson's severe mental illness predisposed him to commit sexually violent offenses. Dr. Alumbaugh emphasized

---

[6] Dr. Matosich, a clinical and forensic psychologist, testified in a similar fashion for the People. However, the court was critical of some aspects of Dr. Matosich's opinion that relied on inadmissible hearsay and did not credit them. Because it appears the court did not rely on any part of Dr. Matosich's testimony in reaching its decision, we do not detail it here.

Wilson's age as a significant factor in reaching her opinion, noting the recidivism rate for rapists 60 years old or older was 3 to 4 percent. Dr. Alumbaugh conceded Wilson's mental illness predisposed him to violence and that, due to the nature of his unremitting mental illness, he would continue to be a danger to himself and to others if he were ever released. However, based on her experience evaluating and treating SVP and MDO patients, Dr. Alumbaugh believed Wilson was properly classified as an MDO, not an SVP.

Dr. Christopher North, a psychologist employed by DSH, has been conducting SVP evaluations for more than 25 years. He evaluated Wilson six times in connection with the SVP petition, in 1999, 2004, 2007, 2008, 2018 and 2019. In 1999 and 2004 Dr. North concluded Wilson met the criteria as an SVP. In 1999 and 2004 Dr. North found Wilson suffered from paraphilia because he had a preoccupation with sex generally and rape in particular. However, in 2007 Dr. North found no evidence Wilson continued to harbor any desire to rape and found it compelling that he had not voiced urges to rape or acted on those urges since 1981. By 2007 Dr. North saw no evidence of paraphilia and believed Wilson was "aging out" of it. While there was no doubt that Wilson suffered from schizoaffective disorder, by 2007 Dr. North found little evidence of sexual preoccupation. Dr. North acknowledged that Wilson had told a female hospital employee in 2012 that he wanted to corner her and rape her, but was not persuaded that single incident suggested Wilson continued to suffer from a sexual disorder. Considering the foregoing facts, along with Wilson's current age, Dr. North opined Wilson was unlikely to commit sexually assaultive acts if released.

8

### 4. *The Parties' Closing Arguments*

In closing argument Wilson's counsel asserted his client was severely psychotic and a danger to the public but not a sexually violent predator. Whatever sexually violent proclivities Wilson may have had in his past, they were no longer present at age 60. Protection of the public, he argued, was properly served by the MDO commitment procedure, not by an SVP commitment that simply did not apply to Wilson. As he did prior to trial, Wilson's counsel requested the court dismiss the petition because Wilson, already committed as an MDO, would never be released into the community and thus posed no danger to the public.

The People acknowledged that Wilson was not a typical SVP in that he suffers from multiple mental disorders that predispose him to committing a variety of dangerous acts, including but not limited to sexual violence. Emphasizing Dr. Musacco's testimony that Wilson's schizoaffective disorder and paraphilia were enmeshed, the People argued those multiple disorders cannot be separately evaluated; they exist together and, coupled with a preoccupation with sex and sexual violence, predispose Wilson to committing sexually violent offenses if he were released into the community.

### 5. *The Court's Ruling on the SVP Commitment Petition*

The court found beyond a reasonable doubt that Wilson satisfied all the criteria for commitment as an SVP: (1) He had been convicted of a qualifying offense; (2) he has been diagnosed with a current mental illness; and (3) the illness makes him a danger to the health and safety of others in that he is likely to engage in acts of sexual violence upon release from a secure facility. In explaining its ruling, the court stated it was "very impressed with Dr. Musacco" and found his opinion that Wilson

remained predisposed to committing sexually violent predatory offenses persuasive. "[Dr. Musacco]'s very very experienced. He set forth all his reasons why he thought [Wilson] . . . met the SVP requirements; that he continues to display conduct which was troubling to the doctor and he still had these—still hears voices telling him what to do, telling him to do things." The court continued, "If I was convinced that he was in a secure setting and was committed to remain there, I might have a different opinion. He's only on—he's only there on a temporary order under [MDO]—as an [MDO]. . . . If I were certain he would remain there, it would be a different story, but I can't assume that he's gonna be—continue to be renewed on an [MDO] status in perpetuity. If he were to be released, that would be a problem. That would be a problem. And so I give great weight and I'm persuaded by Dr. Musacco's opinion."

The court ordered Wilson committed to DHS custody as an SVP for two years, until July 2, 2021, in accordance with the parties' stipulation.

## DISCUSSION

1. *Governing Law*

The SVPA "authorizes the involuntary civil commitment of a person who has completed a prison term but is found to be a sexually violent predator . . . . [Citations.] The SVPA's purposes are "'to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.""" (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 344.)

To establish an individual is a sexually violent predator, the People must prove beyond a reasonable doubt (1) the individual has been convicted of a qualifying sexually violent

10

offense against one or more victims; (2) the individual suffers from a diagnosed mental disorder that makes him or her a danger to the health and safety of others in that (3) it is likely he or she will engage in sexually violent criminal behavior. (See §§ 6600, subd. (a)(1) [defining elements of SVP], 6604 [imposing beyond a reasonable doubt standard]; *People v. Roa* (2017) 11 Cal.App.5th 428, 443; see generally *State Dept. of State Hospitals v. Superior Court, supra,* 61 Cal.4th at pp. 345-346.)[7]

2. *The Court Did Not Act in Excess of Its Jurisdiction*

Relying on *People v. Putney* (2016) 1 Cal.App.5th 1058, 1068 (*Putney*), Wilson contends the superior court acted in excess of its jurisdiction in proceeding with the SVP petition when it was clear Wilson's MDO commitment would continue to be renewed and there was no likelihood he posed any danger to the public. In *Putney* the state petitioned to commit Thomas Earl Putney as an SVP shortly after he had been sentenced to a state prison term of 25 years to life. The court of appeal held the petition should be dismissed as premature, explaining "an

---

[7]     The SVPA, including section 6600, subdivision (a)(1), has been amended several times since May 1999 when the petition was filed. Among other differences between the former and current SVPA, former section 6600, subdivision (a)(1), in effect in April 1999 at the time the petition was filed, required the defendant to have committed a sexually violent offense against two or more victims for which he or she received a determinate sentence. (See Stats. 1996, ch. 462, § 4.) Former section 6604, in effect at the time the petition was filed, limited the commitment term to two years. (See Stats. 1995, ch. 763, § 3.) Because none of the differences in the several iterations of the SVPA affects the issues raised in this appeal and both parties cite to, and discuss, the SVPA in its current form, we do as well.

11

offender who has no prospect of being released from custody for many years does *not* meet the definition of an SVP [under section 6600, subdivision (a)(1)] since the offender poses no danger to the public." (*Id.* at pp. 1068-1069.)

Wilson likens his MDO commitment to Putney's lengthy prison sentence, emphasizing his MDO commitment had been renewed every year for nearly two decades based on findings his severe psychosis made him a danger to the public. As long as he remained a danger to the community, Wilson would continue to be committed as an MDO with mental health treatment, posing no danger to the public. Wilson also emphasizes that all testifying experts, including Dr. Musacco, acknowledged Wilson's psychosis interfered with his ability to engage in, let alone benefit from, SVP treatment. Under those circumstances, Wilson argues, the SVPA's primary objectives of protecting the public and providing treatment were not furthered by adjudicating the SVP petition; and the court erred by proceeding with the trial rather than dismissing the petition. (See *Putney, supra,* 1 Cal.App.5th at p. 1071 ["the [SVP] trial was aimed at resolving the theoretical question of whether Putney was too dangerous for an imminent release he had virtually no possibility of obtaining[;] [w]e cannot approve such a pointless exercise"].)

Wilson made the same argument in his pretrial motion to dismiss. The court rejected it, correctly observing that, unlike Putney, Wilson was not subject to a lengthy prison sentence or even a lengthy commitment. His MDO status was subject to renewal every year. (Pen. Code, §§ 2970, 2972, subds. (a), (c).) That Wilson's MDO commitment was temporary materially distinguished his circumstances from those in *Putney.* (See *People v. Superior Court* (*Perez*) (1999) 75 Cal.App.4th 394, 402,

405 [superior court erred in dismissing SVP petition on ground the defendant was subject to deportation; while deportation was a possibility, it was not a foregone conclusion].)[8] Moreover, the SVPA does not limit eligibility to those who are able to benefit from treatment, despite treatment being an objective of the statute. The court did not exceed its discretion in denying Wilson's motion to dismiss and considering the People's SVP petition.

3. *The Trial Court Did Not Consider Improper Factors in Making Its SVP Determination*

Citing the court's language at the time of trial—"If I were certain he would remain there, it would be a different story, but I can't assume that he's gonna be—continue to be renewed on [MDO] status in perpetuity[;] [i]f he were to be release[d], that would be a problem"—Wilson contends the court relied on improper and irrelevant considerations rather than statutory elements in finding him an SVP. (Cf. *People v. Moore* (1968) 257 Cal.App.2d 740, 750 [court in criminal case erred in refusing to reduce the charged offense to manslaughter due to the risk to community posed by defendant's mental health issues rather than the governing law; trier of fact is not to consider consequences of verdict in rendering decision].)

Viewing the record as a whole and the court's comments in context, it is plain the court was responding to Wilson's argument, made again at the close of evidence, that his MDO commitment alone essentially foreclosed any finding he was a danger to the public. Following that entirely proper response to

---

[8]     Nothing bars a dual commitment as an MDO and SVP, a point Wilson concedes.

13

Wilson's argument, the court expressly credited Dr. Musacco's testimony that Wilson met all the criteria for an SVP, finding persuasive the various bases Dr. Musacco offered to support his opinion. The court did not rely on improper factors when considering the SVP petition.

4. *Substantial Evidence Supports the Court's Findings*

Wilson acknowledges the first two statutory elements necessary to support a SVP finding were satisfied: Wilson had been arrested for a qualifying offense and suffered from a diagnosed mental disorder that made him a danger to himself and others. However, he contends the evidence was insufficient to support the court's finding as to the third element—that he was likely to engage in sexually violent criminal behavior if released.[9]

---

[9] In determining whether the evidence is sufficient to support a commitment under the SVPA, "'"courts apply the same test as for reviewing the sufficiency of the evidence to support a criminal conviction."'" (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1088; accord, *People v. Carlin* (2007) 150 Cal.App.4th 322, 333.) That is, we review the record to determine whether any rational trier of fact could have found the essential elements supporting the SVP determination beyond a reasonable doubt. (*McCloud*, at p. 1088.) In making this determination, "'we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for

14

The determination a person is "'*likely* to engage in acts of sexual violence'" requires more than simply a finding of "more likely than not." (*People v. Shazier* (2014) 60 Cal.4th 109, 126; accord, *People v. Roberge* (2003) 29 Cal.4th 979, 987.) Rather, the "the standard of likelihood is met 'when "the person presents a *substantial danger,* that is, a *serious and well-founded risk,* that he or she will commit such crimes if free in the community."'" (*Shazier*, at p. 126; accord, *Roberge*, at p. 982.)

In contending the evidence was insufficient, Wilson observes that he last committed a sexually violent offense nearly 40 years ago, in 1981, when he was 22 years old. Although Wilson threatened to rape a hospital staff member in 2012 when she reprimanded him, and had consensual sex with another patient in exchange for food in 2014, he had not engaged in any nonconsensual sexual behavior during his 39 years in confinement. Furthermore, as all the testifying experts acknowledged, Wilson's age—nearly 60 years old—significantly reduced the likelihood of recidivism for a sexually violent offense. In addition, Wilson emphasizes the testimony of his two expert witnesses: Dr. North testified Wilson had "aged out" of his paraphilic disorder and no longer met the criteria for SVP; and Dr. Alumbaugh testified Wilson did not suffer from OSPD, even if it were a legitimate illness recognized in the psychiatric community, which she doubted.

---

substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears that 'upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142; accord, *People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

In characterizing this as a "difficult case," the court cited the conflicting opinions of the testifying experts as to whether Wilson posed a serious, well-founded risk of criminal sexual behavior if he were released. In concluding he did, the court relied exclusively on Dr. Musacco's testimony that Wilson's schizoaffective disorder, combined with his hypersexuality and sexual preoccupations, created a substantial risk he would engage in predatory sexual behavior if released. Dr. Musacco also testified he was not surprised Wilson had not acted on his urges while in DHS custody, explaining it was rare for SVP's to engage in such conduct while in a confined setting. Dr. Musacco's opinion, which is not challenged by Wilson as speculative or unsound, was sufficient, even though in conflict with those of the other experts, to support the court's conclusion. (See *People v. Wright* (2016) 4 Cal.App.5th 537, 545 [testimony of single witness, including expert witness, is sufficient to constitute substantial evidence, unless testimony is based on speculation or conjecture]; *People v. Bowers* (2006) 145 Cal.App.4th 870, 879 [psychologist's expert opinion defendant posed danger to public due to her mental illness was sufficient to support jury's finding].)

Finally, similar to the arguments he made in connection with his motion to dismiss, Wilson urges Dr. Musacco's opinion rested on the wrong hypothetical. The proper question, Wilson insists, is not whether he would be likely to engage in predatory sexual behavior if released, but whether, "[i]f [Wilson] were living in a secure mental health facility receiving treatment for his mental health condition under a conservatorship or MDO commitment, would [he] pose a serious, well-founded risk to commit sexually violent predatory offenses." When viewed from

16

this perspective, Wilson asserts, "the answer is obviously that he does not."

Wilson's MDO commitment was set to expire in April 2019. That it would have likely been (and has since been) renewed, as we have explained, did not preclude the court from considering the SVP petition. (Cf. *Putney, supra,* 1 Cal.App.5th at p. 1069.) Dr. Musacco properly opined on Wilson's propensity to commit sexually violent acts if he were released. The court credited his opinion. Substantial evidence supported the court's finding.

## DISPOSITION

The judgment is affirmed.



PERLUSS, P. J


We concur:


SEGAL, J.


FEUER, J.